Dennis E. LICKTEIG, Appellant,

v.

IOWA DEPARTMENT OF TRANSPORTATION, Appellee.

No. 83–395.

Supreme Court of Iowa.

Oct. 17, 1984.

William S. Smith, Waterloo, for appellant.

Michael C. Fitzgerald, Asst. Atty. Gen., for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

WOLLE, Justice.

When the Iowa Department of Transportation (DOT) routed a new highway over property plaintiff Dennis Lickteig was leasing, he became entitled to relocation assistance benefits pursuant to Iowa Code chapter 316 (1981). In this proceeding involving judicial review of agency action, plaintiff contends that he is entitled to substantially greater benefits than the DOT awarded. The district court held a plenary evidentiary hearing, then found that plaintiff was not entitled to greater benefits than he had been offered by the DOT. We affirm.

The evidence presented by plaintiff, which was essentially uncontradicted, showed that plaintiff is a self-employed handyman who operates his own business from his residence. Until December of 1979, he leased a house and outlying buildings pursuant to an oral month-to-month rental agreement for $250 per month. In August of 1978, however, his landlord contracted to sell the property to the DOT for use in a federally funded highway project. Soon thereafter, the DOT entered into preliminary negotiations with plaintiff concerning his eligibility for relocation assistance benefits. The DOT offered him relocation payments covering both residential and business relocation.

On September 19, 1979, plaintiff agreed in writing to surrender the premises to the DOT on December 15, 1979. He thereupon moved to another business-residence location and entered into a new rental agreement which required monthly payments of $350. Four months into the lease, the rent was raised to $400. Less than a year after moving into the new residence, plaintiff was informed that he would either have to purchase the property or move out. Plaintiff decided not to buy that property because it was located in a residential rather than a commercial zone. Instead, he made a down payment on property at another location and moved there at the close of 1980.

After extended negotiations with the DOT plaintiff was paid $1364 for the actual expense of moving to the property he had rented, and he was also offered a residential housing payment of $6000 and business relocation assistance of $2500.

On October 21, 1980, prior to plaintiff's move to his newly acquired property, the Relocation Appeal Board of the DOT informally reviewed plaintiff's eligibility for relocation assistance. The appeal board concluded that in addition to amounts he previously had been paid or offered, plaintiff should be reimbursed for $100 of telephone expenses made necessary by the relocation. Finally, the DOT recalculated the business relocation assistance and offered plaintiff an additional $3400. Dissatisfied with these offers, plaintiff filed his petition for judicial review of the agency action in September of 1981.

On judicial review the district court held a full evidentiary hearing pursuant to Iowa Code section 17A.19(7), then affirmed the DOT award, concluding:

> The court having searched the statutes and administrative rules can find no provision for allowance of most of the claimed expenses of the plaintiffs.

The court also declined to grant plaintiff's application for attorney fees and expenses. On appeal plaintiff contends that the district court should have awarded him substantially greater business and residential relocation benefits and should have granted his request for attorney fees. We address each of these issues in turn.

I. *Scope of Review.*

The scope of judicial review of agency action is circumscribed by Iowa Code sections 17A.19 and .20. The district court exercises essentially appellate review and may alter or grant relief from the chal-

lenged agency action upon the grounds specified in section 17A.19(8). *Women Aware v. Reagen*, 331 N.W.2d 88, 90 (Iowa 1983). Our review under section 17A.20 is limited to correcting errors of law made by the district court. *Osborne v. Iowa Natural Resources Council*, 336 N.W.2d 745, 748 (Iowa 1983); *Iowa Bankers Association v. Iowa Credit Union Dept.*, 335 N.W.2d 439, 442 (Iowa 1983).

■ The agency action here reviewed—DOT determination of plaintiff's relocation benefits—involved neither rule making nor a "contested case"; the agency held no evidentiary hearing before it decided how much it would offer to pay plaintiff. *Compare* § 17A.2(2) *with* § 17A.2(9). This affected judicial review in two respects. First, the district court properly received additional evidence pursuant to Iowa Code section 17A.19(7). It therefore could base its specific judicial determinations on consideration of an amplified factual record, not just the information available to the agency. *See Security Savings Bank v. Huston*, 293 N.W.2d 249, 251 (Iowa 1980). Secondly, because this was not judicial review of a "contested case", the plaintiff could not challenge the agency action on the "substantial evidence" ground specified in subsection f of section 17A.19(8):

> In a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole.

(Emphasis added.) In all other respects the scope of judicial review of the DOT action here was the same as that in a "contested case." *Cf. Community Action Research Group v. Iowa State Commerce Commission*, 275 N.W.2d 217, 219 (Iowa 1979). Our task is to consider the same amplified record that the district court has considered in its judicial review and make anew the judicial determinations it has made. *See Security Savings Bank v. Huston*, 293 N.W.2d at 251; *Hoffman v. Iowa Department of Transportation*, 257 N.W.2d 22, 25 (Iowa 1977).

## II. *Business Relocation Expenses.*

Plaintiff contends that the total award of $5,900 for relocation of his business is insufficient, but like the district court we find the agency's determination of that award was entirely consistent with the controlling statute. Plaintiff's right to receive business relocation expenses is a statutory right derived from Iowa Code section 316.4, which provides:

1. Whenever the acquisition of real property for a program or project undertaken by the department will result in the displacement of any person, the department shall make a payment to any displaced person, upon proper application as approved by such department, for:

a. Actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;

b. Actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the department; and

c. Actual reasonable expenses in searching for a replacement business or farm.

2. Any displaced person eligible for payments under subsection 1 who is displaced from a dwelling and who elects to accept the payments authorized by this subsection in lieu of the payments authorized by subsection 1 may receive a moving expense allowance, determined according to a schedule established by the department not to exceed three hundred dollars; and a dislocation allowance of two hundred dollars.

3. Any displaced person eligible for payments under subsection 1 who is displaced from his place of business or from his farm operation and who elects to accept the payment authorized by this subsection in lieu of the payment authorized by subsection 1, may receive a fixed payment in an amount equal to the average annual net earnings of the business or farm operation, except that such

payment shall be not less than two thousand five hundred dollars nor more than ten thousand dollars. In the case of a business, no payment shall be made under this subsection unless the department is satisfied that the business cannot be relocated without a substantial loss of its existing patronage, and is not a part of a commercial enterprise having at least one other establishment not being acquired for a highway project which is engaged in the same or similar business. For purposes of this subsection, the term "average annual net earnings" means one-half of any net earnings of the business or farm operation, before federal, state, and local income taxes, during the two taxable years immediately preceding the taxable year in which such business or farm operation moves from the real property acquired for such project, or during such other period as the department determines to be more equitable for establishing such earnings, and includes any compensation paid by the business or farm operation to the owner, his spouse, or his dependents during such period.

This statute describes two basic methods for calculating the benefits a relocated business may receive: subsection 316.4(1) authorizes payment of specific expenses and losses incurred as a result of the business relocation; and subsection 316.4(3) authorizes payment of a fixed amount representing net earnings of the business "in lieu of the payment authorized by subsection 1."

The DOT awarded plaintiff $2500 initially as an "in lieu" payment. That figure was later revised upward to $5900 when plaintiff submitted audited income tax returns showing net income greater than he had originally reported. The DOT now makes a twofold response to plaintiff's claim for additional "in lieu" benefits as well as additional actual losses and expenses of relocating. First the DOT contends that plaintiff may not recover benefits under both business subsections but instead is limited to benefits under the subsection whose formula yields him the greater benefit. Secondly, the DOT argues that

it correctly calculated the amount of "in lieu" benefits to which plaintiff was entitled. We agree with both propositions.

■ A. Election of Benefits. Plaintiff submitted evidence adequate to support his claims for both actual expenditures and an in lieu payment, and he never made a formal, express election to receive the in lieu payment rather than actual moving losses and expenses. Nevertheless, section 316.-4(3) explicitly limits eligibility for the in lieu payment to the displaced person *"who elects to accept* the payment authorized by this subsection in lieu of the payment authorized by subsection 1 ...."* (Emphasis added).

It makes no difference that the DOT may not clearly have informed plaintiff that he was required to elect to receive one or the other. Since plaintiff claimed benefits under both subsections, he will be allowed recovery under that subsection which provides him the greater benefit. The evidence clearly shows the in lieu payment he was awarded exceeded the recovery he might otherwise have obtained by seeking actual losses and expenses under subsection 1. The district court correctly held that plaintiff was not entitled to recover both an actual loss and an in lieu business relocation benefit.

Plaintiff contends that he should be allowed his actual expenses and losses in addition to the in lieu payment because federal law authorizes the award of actual business expenses. We disagree. The Iowa statute allowing relocation assistance quite precisely tracks the wording of the Uniform Relocation Assistance Act, under which persons displaced by a federally financed program or project may receive relocation benefits. 42 U.S.C. § 4622; *see Young v. Harris,* 599 F.2d 870, 876 (8th Cir.1979). The Iowa regulations promulgated by the DOT, as well as Iowa Code chapter 316, are closely patterned after the federal statute and regulations. Just as a person seeking relocation benefits under Iowa law must elect between an actual moving expense payment and an in lieu

payment, so must the same election be made under federal law. 42 U.S.C. § 4622(c). Consequently, regardless whether the Iowa statute or the nearly identical federal statute is applied, plaintiff was correctly limited to recovering either the in lieu payment or a payment based on actual expenses and losses.

■ B. Calculation of the In Lieu Benefit. Plaintiff contends that the DOT erred in its calculation of "average annual net earnings" as defined in section 316.4(3). That provision states in relevant part:

> For purposes of this subsection, the term "average annual net earnings" means one-half of any net earnings of the business or farm operation, before federal, state, and local income taxes, during the two taxable years immediately preceding the taxable year in which such business or farm operation moves from the real property acquired for such project, or during such other period as the department determines to be more equitable for establishing such earnings, and includes any compensation paid by the business or farm operation to the owner, his spouse, or his dependents during such period.

Both the DOT and the district court concluded that plaintiff was entitled to $5900 under this provision, based on an averaging of the net income shown on his income tax returns for 1977 and 1978. Plaintiff argues that the agency should have used his 1978 and 1979 returns instead, because a computation based on the 1979 rather than the 1977 return would have yielded a greater "average annual net earnings" figure. Further he argues that he actually relocated his business only 16 days before the beginning of 1980, so the more equitable comparison would be between his 1978 and 1979 returns. He points to the language of section 316.4(3) permitting the DOT to choose a more equitable period for establishing such earnings.

We are not persuaded by plaintiff's argument. Section 316.4(3) vests the DOT with discretion to determine whether a more equitable period should be chosen and what will constitute a more equitable period.

The DOT selected the two taxable years identified in the statute; it was not required to select a later year instead just because the use of a later year would yield a greater relocation benefit. Moreover, the record shows that plaintiff waited almost three years before submitting to the DOT his 1979 income tax returns. That belated submission of supporting documentation was not in keeping with the statute's mandate that displaced persons be paid benefits promptly after a move. *See* Iowa Code § 316.9(3) (1983). The DOT did not abuse its discretion in refusing to use the 1979 return in calculating the in lieu benefit.

The DOT and the district court correctly decided that plaintiff was entitled to receive $5900 as a statutory business relocation benefit. Because plaintiff had been paid $2500 of that amount before he sought judicial review, judgment was properly entered for $3400.

III. *Residential Expenses.*

Plaintiff also contends that he was entitled to residential relocation benefits in excess of the amount of $7464 allowed by the DOT and the district court—$1464 for actual residential moving expenses and $6000 as a housing replacement benefit.

■ A. Actual Moving Expenses. Iowa Code chapter 316 governs the award of residential relocation expenses. Section 316.4(1)(a), quoted above, permits a displaced person to recover the actual reasonable expenses of moving the entire family. As with the business assistance provisions, a person may elect to receive a residential "in lieu of relocation" payment rather than reimbursement of the actual expenses incurred, but the in lieu award is subject to a $500 ceiling. Iowa Code § 316.4(2).

The DOT awarded plaintiff $1464 in actual residential moving expenses, pursuant to section 316.4(1)(a). Plaintiff contends he was also entitled to reimbursement of $1631 for the expenses he incurred in his second move, a relocation from his replacement rental property to the property he undertook to buy about a year later.

Neither section 316.4 nor the regulations promulgated by the DOT address the question whether expenses of a second move are to be reimbursed. Those regulations do explain in considerable detail what expenditures constitute reasonable moving costs and related expenses. 820 Iowa Admin.Code § 8.4(1). The regulations also list several "moving cost exclusions" which include a catch-all provision providing:

No payment shall be made for such other items as the agency determines should be excluded on the basis that they are not reasonable, or proper.

820 Iowa Admin.Code § 8.4(2)(e). The expenses of a second move are not specifically identified as compensable. Moreover, the regulations give the DOT considerable discretion to disallow claimed items of residential moving expense. The DOT could reasonably have decided that there was not a sufficient causal relationship between the initial need to relocate and the expenses incurred as a result of the second move. The evidence showed that plaintiff voluntarily chose the first relocation site and had reason to know when he moved into that rental property that it was not zoned for commercial use and would not be a suitable place from which to operate his business. We conclude that the DOT did not abuse its discretion in disallowing the expenses incurred by plaintiff in his second move.

Plaintiff suggests that federal law governing moving expenses of dislocated persons should be applied, but he has not pointed to any provision in the federal statute or regulations which would provide him greater residential relocation benefits than do the Iowa statute and regulations. The pertinent provisions of Iowa Code section 316.4 and the regulations promulgated thereunder are virtually identical to the comparable pertinent federal statute and regulations. Plaintiff established no basis in either federal or Iowa law for challenging the agency's determinate of his actual moving expenses. *See* 42 U.S.C. § 4622(a), (b); 24 CFR 42 §§ 303 *et seq.*

B. Replacement Housing Supplemental Benefit. When the DOT bought the property he was renting, plaintiff also became eligible for the replacement housing benefit described in Iowa Code sections 316.6 and 316.8 (1981). Section 316.6 provides that plaintiff was eligible for a maximum of $4000 for housing assistance, either as a rent supplement or down payment, if comparable housing was available and could be obtained with that amount of assistance. Because comparable housing, as there defined, could not be procured for plaintiff without breaking through that section's $4000 ceiling, the DOT determined that plaintiff was eligible for a replacement housing payment of $6000 under section 316.8(1) which provides in pertinent part:

If a highway project cannot proceed to actual construction because comparable replacement sale or rental housing is not available, and the department determines that such housing cannot otherwise be made available, the department may take such action as is necessary or appropriate to provide such housing by use of funds authorized for such project. The department may let contracts for the construction of said housing to approve plans and specifications for the building thereof, and to supervise, inspect and approve the housing once constructed in order that the housing so constructed complies with the terms and conditions of this chapter.

The DOT utilized two replacement housing studies, a technique permitted by its regulations, to arrive at its $6000 figure. *See* 820 Iowa Admin.Code §§ 8.6(2), (3). These reports showed that comparable residential housing was available for plaintiff at a rental rate of $350 to $375 per month compared to the $250 plaintiff had paid under his former lease. As plaintiff would have to pay approximately $125 more per month after relocating than before, the DOT granted him $125 per month for four years, or a total of $6000. Because it was awarding the benefit under section 316.8, rather than under section 316.6, it properly disregarded the $4000 ceiling of section 316.6.

We conclude that the DOT did not abuse the discretion conferred upon it by section

316.8 in calculating the amount of the replacement housing payment in that manner which, except for the $4000 ceiling, was precisely the method suggested in section 316.6. Exercising appropriate discretion, the DOT reasonably determined that comparable housing would "otherwise be made available" to plaintiff, within the meaning of section 316.8, by awarding him a total supplemental payment in excess of the $4000 he would have received under section 316.6. *See* 820 Iowa Admin.Code § 8.10 (equating unavailability of comparable housing to unavailability "within the payment limitations of § 316.6(2)").

■ Plaintiff generally agrees with the DOT interpretation and application of sections 316.6 and 316.8, but he contends the benefit paid to him should be measured not by the higher cost of comparable rental property but by his $30,000 down payment on property he is now purchasing. Plaintiff argues that when the DOT turned to section 316.8 to calculate his replacement housing supplement in order to bypass the $4000 ceiling of section 316.6, it was bound to reimburse fully his cost of replacement housing.

For two reasons, we find plaintiff's position untenable. First, we agree with the district court's finding, based on the DOT's replacement housing studies, that plaintiff could have obtained comparable housing for the additional $6000 awarded by the DOT. The $6000 offered to plaintiff thus satisfied the legislative purpose of section 316.3; nothing in either section 316.6 or section 316.8 required the DOT to base its replacement housing supplement on properties available for purchase rather than rent. Secondly, we agree with the DOT's contention that payment to plaintiff of a substantial portion of his $30,000 down payment would be totally disproportionate to the economic harm he sustained in having to seek higher-priced replacement housing. Plaintiff had no equity in the property he formerly was renting. He would receive an unfair windfall if a substantial portion of his equity investment in replacement property were reimbursed under the guise of a replacement housing benefit.

The DOT did not abuse its discretion in finding plaintiff entitled to benefits of $6000 for replacement housing and $1464 for actual residential relocation costs. The district court properly approved the agency's determination that plaintiff was entitled to those specific amounts. Because plaintiff had already been paid $3764, the district court correctly entered judgment for $3700 for plaintiff's residential relocation benefit.

### IV. *Attorney Fees.*

■ Plaintiff also attempts to recover attorney fees. He acknowledges that attorney fees are ordinarily not recoverable as damages or allowable as court costs in the absence of statutory or contractual authority. *See McNabb v. Osmundson*, 315 N.W.2d 9, 15 (Iowa 1982); *Wilson v. Fenton*, 312 N.W.2d 524, 529 (Iowa 1981). Plaintiff contends, however, that the award of attorney fees is necessary to carry out the declared public policy of Iowa Code chapter 316, "fair and equitable treatment of persons displaced as a result of state and federally assisted highway programs ...." Iowa Code § 316.3.

■ Plaintiff was not entitled to an award of attorney fees. Iowa Code chapter 316, regulations promulgated by the DOT, and the comparable provisions of federal law spell out in considerable detail the benefits which displaced persons may receive. Neither expressly nor by implication do we find in the applicable law a suggestion that displaced persons are entitled to recover attorney fees in addition to the other designated benefits. *See Harris v. Lynn*, 555 F.2d 1357, 1360 (8th Cir.), *cert. denied*, 434 U.S. 927, 98 S.Ct. 410, 54 L.Ed.2d 286 (1977) (no statutory authority to allow attorney fees in action brought by persons displaced by federal highway project). *Compare Weaver Construction Co. v. Heitland*, 348 N.W.2d 230, 233 (Iowa 1984) (attorney fees not allowed because not explicitly mentioned in Iowa Code chapter 677 (1983)) *with River Bend Farms v.*

*M & P Missouri Levee District,* 324 N.W.2d 460, 462–64 (Iowa 1982) (attorney fees allowed in Iowa Code chapter 455 condemnation proceeding because of authorization in Iowa Code §§ 472.1 and 472.33).

Plaintiff has received the "fair and equitable treatment" which chapter 316 intended for persons displaced by highway projects. He was entitled to no greater relocation benefits than the department offered to pay him before this judicial review proceeding was commenced. The district court entered judgments for plaintiff in amounts which correctly reflect his entitlement to relocation benefits.

AFFIRMED.