MERRILL et al., Appellees and Cross–Appellants,

v.

WILLIAM E. WARD INSURANCE et al., Appellants and Cross–Appellees;

Jackson National Life Insurance.

[Cite as *Merrill v. William E. Ward Ins.* (1993), 87 Ohio App.3d 583.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–721.

Decided May 6, 1993.

*Luper, Wolinetz, Sheriff & Neidenthal* and *Eugene R. Butler,* for appellees and cross-appellants.

*Porter, Wright, Morris & Arthur* and *R. Leland Evans,* for appellants and cross-appellees.

DESHLER, Judge.

This is an appeal by defendants, William E. Ward ("Ward") and William E. Ward Insurance Agency ("Ward Insurance Agency"), from a judgment of the trial court, overruling defendants' motion for judgment notwithstanding the verdict and/or new trial. Plaintiffs cross-appeal from a judgment of the trial court, which granted partial summary judgment in favor of defendants, resulting in the dismissal of the estate of Samuel English as a party in this action.

Plaintiffs, Pamela Merrill, David English, Michael English, Donna English and Sharon Phelps, are the children of Samuel English, deceased. Defendant Ward is the owner of Ward Insurance Agency, an independent insurance agency.

The evidence at trial established that defendants handled various insurance matters for Samuel English during a period from approximately 1984 until the time of English's death in the fall of 1988. During this time, defendants sold four life insurance policies to English. One of the policies was issued by the Jackson National Life Insurance Company ("Jackson National"), while the other three were issued by the Universal Guaranty Life Insurance Company ("Universal Guaranty"). The Jackson National policy, which is the subject of this dispute, was issued in December 1985 and carried a face value of $150,000. Under the terms of the policy, English's second wife, Vendetta English,[1] was designated as a fifty-percent beneficiary, while the remaining fifty percent of the proceeds were to be divided equally between Samuel English's five children, the plaintiffs in this case. The three Universal Guaranty policies consisted of one policy with a face value of $100,000 and two policies with a face value of $50,000 each. Under the $100,000 Universal Guaranty policy, Vendetta English was also designated as a fifty-percent beneficiary and the children of Samuel English were to equally share in the other fifty percent of the proceeds.

In August 1988, Samuel English telephoned Ward and requested a summary concerning the designated beneficiaries on each of his life insurance policies. Ward prepared a written memorandum, dated August 22, 1988, and took it to English's office. That letter indicated that, under the Jackson National policy, there was $150,000 available in proceeds to be divided equally between the children of Samuel English. None of the parties in this action dispute that the information provided in the letter as to the beneficiaries of the Jackson National policy was incorrect, *i.e.*, as noted above, under the actual terms of the Jackson National policy, Vendetta English was a fifty-percent beneficiary and the children of Samuel English were to equally divide the other fifty percent of the proceeds.

Ward testified at trial that he informed English, at the time English requested the information, that he was unsure as to the beneficiaries on the Jackson National policy and that he would have to further check to verify the information. Ward testified that later that week he contacted the Jackson National regional office regarding the beneficiaries. He testified that, as a result of contacting the regional office, he subsequently returned to English's office and informed English that the August 22, 1988 letter was incorrect.

---

1. The evidence indicated that Samuel English married his second wife, Vendetta English, in September 1985.

The evidence indicates that in September 1988, Samuel English entered the hospital to undergo some tests. English was subsequently diagnosed with cancer. While in the hospital, English directed his daughter, Pamela Merrill, to contact an attorney about preparing a will. A will was drafted and English signed the will in the hospital. The will indicated that the personal property of Samuel English included $350,000 in insurance policies, and provided for the proceeds of the policies to be distributed to English's children and grandchildren, along with a provision for the remainder to go into a family credit union.

On September 19, 1988, Pamela Merrill went to the Ward Insurance Agency and obtained a change of beneficiary form. Samuel English signed the form on that date in the hospital. The change of beneficiary form pertained to the $100,000 Universal Guaranty policy in which Vendetta English was originally listed as a fifty-percent beneficiary. Under the provisions of the form signed by Samuel English, Vendetta English was deleted as a beneficiary on the Universal Guaranty policy, thereby leaving the five children of Samuel English as the sole beneficiaries under that policy.

Samuel English died on October 22, 1988. Following English's death, one of his sons, Michael English, discovered his father's copy of the August 22, 1988 letter from Ward which incorrectly identified the children of Samuel English as the sole beneficiaries under the Jackson National policy. When the proceeds of the Jackson National policy were subsequently distributed to the beneficiaries, Vendetta English received fifty percent of the proceeds of the Jackson National policy ($75,000) while the plaintiffs shared equally the remaining fifty percent, *i.e.*, each plaintiff received approximately $15,000.

On November 8, 1989, plaintiffs, along with the estate of Samuel English, filed a complaint against defendants and the Jackson National Life Insurance Company.[2] The complaint alleged claims for negligence, negligent misrepresentation and breach of contract. Plaintiffs alleged under their negligent misrepresentation claim that defendants had negligently provided incorrect information to Samuel English regarding the beneficiaries of his life insurance policies. Plaintiffs averred that Samuel English, during his lifetime, intended to change the beneficiary designations of all of his policies to include only the plaintiffs as intended beneficiaries of the life insurance proceeds. The complaint further alleged that in reliance upon the misinformation provided, English had not acted to change a co-beneficiary on the Jackson National policy, thus resulting in $75,000 worth of benefits being paid to an individual who was not a child of English.

---

**2.** On August 10, 1990, plaintiffs filed a notice of voluntary dismissal of their claim against Jackson National, pursuant to Civ.R. 41.

On October 24, 1990, defendants filed a motion for summary judgment against the plaintiffs and the estate of Samuel English. Defendants asserted that they were not liable to the children of Samuel English based upon certain releases signed by the children regarding the Jackson National policy. Defendants' motion for summary judgment further contended that the estate of Samuel English was not a proper party because neither Samuel English nor his estate had any right to the proceeds of the Jackson National policy. By decision dated December 17, 1990, the trial court sustained defendants' motion for summary judgment as to the dismissal of the estate of the decedent, but overruled the motion with respect to the individual plaintiffs.

The case proceeded to a jury trial on February 18, 1992. Following plaintiffs' opening argument, defendants moved for a directed verdict, which was overruled by the trial court. Defendants renewed their motion for directed verdict at the close of plaintiffs' case and the trial court again overruled the motion. At the close of defendants' case, the trial court sustained defendants' motion for directed verdict as it pertained to plaintiffs' breach of contract claim, but overruled the motion as to plaintiffs' remaining claims. On February 21, 1992, the jury returned a verdict in favor of plaintiffs in the amount of $75,000. The trial court entered judgment in favor of plaintiffs by entry filed March 4, 1992.

On March 6, 1992, defendants filed a motion for judgment notwithstanding the verdict and/or new trial. By decision and entry dated May 5, 1992, the trial court overruled defendants' motion.

On appeal, defendants set forth the following assignments of error for review:

"A. The trial court failed to properly apply the law of negligent misrepresentation to the case at bar and, hence, erred by failing to find that defendants did not owe a duty to plaintiffs as a matter of law.

"B. The trial court erred by failing to grant defendants' motions for directed verdict at the close of plaintiffs' case and at the close of all the evidence because there was no evidence introduced by plaintiffs to establish that they or their father relied upon the alleged negligent misrepresentation.

"C. The trial court erred by improperly excluding evidence which defendants sought to admit.

"D. The trial court erred by finding that the Last Will and Testament of Samuel English should be admitted into evidence.

"E. The trial court erred by overruling in part defendants' motion for summary judgment based upon the affirmative defense of release and by failing to permit defendants to introduce into evidence at trial the releases executed by plaintiffs and to inquire into the execution of the circumstances surrounding the releases.

"F. The trial court erred by denying defendants' motion for judgment notwithstanding the verdict or, in the alternative, a new trial."

On cross-appeal, plaintiffs raise the following assignment of error:

"The trial court erred as a matter of law in dismissing, pursuant to Civil Rule 56, the estate of Samuel D. English as a party plaintiff."

Defendants' first and second assignments of error are interrelated and will be considered together. Under the first assignment of error, defendants contends that the trial court erred in overruling defendants' motions for directed verdict at trial by not properly applying the law of negligent misrepresentation, and thereby failing to find that defendants did not, as a matter of law, owe a duty to plaintiffs. Defendants' second assignment of error asserts that the court erred in failing to grant defendants' motions for directed verdict at trial because there was no evidence introduced by plaintiffs to establish that plaintiffs, or their father, relied upon the alleged negligent misrepresentation.

The thrust of plaintiffs' case at trial was the contention that Samuel English had sought the information regarding his beneficiaries in order to ensure that his children would receive all of the proceeds of his life insurance policies; thus, it was contended, had it not been for the misinformation contained in the August 22, 1988 letter from Ward, concerning the beneficiaries on the Jackson National policy, English would have changed the beneficiary on that policy to remove Vendetta English as a beneficiary. Accordingly, plaintiffs asserted that the negligent representation of Ward resulted in a loss of $75,000 to plaintiffs as the intended beneficiaries of the Jackson National policy.

Defendants argue that there was no contractual relationship between defendants and plaintiffs, since only the decedent, Samuel English, was a client of the Ward Insurance agency. Therefore, defendants argue, plaintiffs cannot establish the existence of a duty between defendants unless the requirements of 3 Restatement of the Law 2d, Torts (1965) 126–127, Section 552, have been met. Defendants assert that the facts of the instant case fall outside the limited liability exception for negligent misrepresentations as defined under Section 552 of the Restatement.

The Ohio Supreme Court has adopted the position set forth in Section 552 of the Restatement for determining the extent of liability for one who, in the course of his or her profession, negligently provides information to others. *Haddon View Invest. Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212. In *Haddon View*, the court, in applying Section 552 of the Restatement to the facts of that case, held that "[a]n accountant may be held liable by a third party for professional negligence when that third party is a

member of a limited class whose reliance on the accountant's representation is specifically foreseen." *Id.* at 157, 24 O.O.3d at 270, 436 N.E.2d at 215.

The relevant provisions of Section 552 of the Restatement provide that:

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."

In defining the tort action for negligent misrepresentations, it has been noted that "[a] representation made with an honest belief in its truth may still be negligent, because of lack of reasonable care in ascertaining the facts, or in the manner of expression, or absence of the skill and competence required by a particular business or profession." Prosser & Keeton, Law of Torts (5 Ed.1984) 745, Section 107. Comment *a* to Section 552 of the Restatement provides that an action under the rule encompasses factual situations where "there is no intent to deceive but only good faith coupled with negligence." Liability is limited under the Restatement rule to a person or limited class of persons for whose benefit the information was intended, and who thereby suffers loss as a result of justifiable reliance upon the misinformation.

In applying the principles of Section 552 of the Restatement to the facts of the instant case, we conclude that plaintiffs constitute a limited class of individuals for whose benefit the representations were made and whose reliance on the information was specifically foreseen by defendants. *Haddon View, supra,* 70 Ohio St.2d at 157, 24 O.O.3d at 270, 436 N.E.2d at 215. In the present case, plaintiffs presented evidence indicating that the insured, Samuel English, sought information from his insurance agent regarding the identity of his beneficiaries. Ward's duty of care, acting in his capacity as an insurance agent for his client, Samuel English, was to exercise reasonable care to provide accurate representations about existing information which was ascertainable by him. At the time of

the request, defendants knew that plaintiffs were named beneficiaries on all four of the life insurance policies of their father. Thus, defendants were also aware that plaintiffs, as a clearly defined group, stood to be effected by any changes made to the policies in reliance on the requested information, *i.e.*, defendants knew that Samuel English sought the information about his beneficiaries with the purpose of influencing a decision regarding the beneficiaries. There is no dispute that the information provided in the August 22, 1988 letter was incorrect as to the beneficiaries of the Jackson National policy.

Plaintiffs further presented evidence indicating that Samuel English sought the information at issue with the intent of ensuring that his children (and grandchildren) would receive all of the proceeds of his life insurance policies, and that English subsequently relied upon this information in providing for the disposition of his property. More specifically, the evidence indicates that after receiving the August 22, 1988 letter from Ward, English prepared a will which expressed his intent that all of his insurance proceeds were to be distributed to his children and grandchildren. Further, subsequent to his receipt of the letter, Samuel English executed a change of beneficiary form on the $100,000 Universal Guaranty policy so that Vendetta English was removed as a beneficiary, thereby leaving English's children as the sole beneficiaries of that policy.

Defendants contend that recovery by plaintiffs under Section 552 of the Restatement is precluded because plaintiffs cannot show that they themselves relied upon the representations by Ward. Thus, under defendants' argument, evidence of reliance by Samuel English alone is insufficient to impose liability upon defendants. We disagree.

One commentator has noted that:

" * * * [B]y entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of the contract with A does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person." *Prosser & Keeton, supra,* at 667–668, Section 93.

In the instant case, the purpose of the relationship between Ward and the decedent in transacting for life insurance was to carry out the insured's intention of benefiting known, designated individuals. To the extent that the interests of the beneficiaries overlap with those of the decedent, we conclude that plaintiffs possess a sufficient relationship or connection to the transaction at issue such that the reliance of decedent flows to the third-party intended beneficiaries, thereby allowing the children of decedent to succeed to their father's claim for misrepresentation against defendants. Under the argument advanced by defendants,

reliance by injured third-party beneficiaries could in most instances never be shown where a negligent representation, although relied upon by a contracting party, is not discovered until the death of that party possessing the cause of action. We decline to hold that otherwise actionable conduct should be shielded merely because the injured beneficiaries could not, under such circumstances, have relied themselves upon the representation. Rather, based upon plaintiffs' special relationship to decedent and to the underlying transaction as intended beneficiaries of their father's life insurance proceeds, and because plaintiffs have presented credible evidence of reliance by the decedent, we conclude that evidence of decedent's reliance is sufficient to impose liability for defendants' negligent misrepresentation.[3]

▇ The test for granting a directed verdict "is whether the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the non-movant." *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114, 1117. It is "the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence, if believed, relating to that issue to permit reasonable minds to reach different conclusions on that issue." *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899. In construing the facts of the present case most strongly in favor of plaintiffs, reasonable minds could have found that plaintiffs were part of a limited class for whose benefit the representations were made, and that Samuel English justifiably relied upon the incorrect information by not effecting a change in the beneficiaries of the Jackson National policy contrary to his desire to leave his benefits to his children.

Based upon the foregoing, defendants' first and second assignments of error are not well taken and are overruled.

Under the third assignment of error, defendants assert that the trial court erred by excluding certain evidence sought to be admitted by defendants at trial. More specifically, defendants contend that the trial court erred by failing to admit evidence of statements made by Samuel English in conversations with Ward in August and September 1988, and in failing to permit defendants to elicit testimony from Larry Braun concerning an alleged telephone conversation on September 19, 1988. Defendants proffered for the record certain statements attributed to Samuel English in conversations between English and Ward. Defendants also argue that the court erred in failing to permit defendants to

---

3. Defendants also contend, under their first assignment of error, that the trial court erred in failing to give defendants' proposed jury instructions Nos. 1 and 2. Because we decline to accept defendants' view that the reliance of the decedent was not at issue in this action, we further find that the trial court did not err in refusing to give these proposed instructions.

introduce certain deposition testimony of Samuel English's second wife, Vendetta English, based upon communications she had with her husband prior to his death.

Defendants argue that the statements of Samuel English which defendants sought to admit were not hearsay utterances offered to prove the truth of the matters asserted; rather, they were nonhearsay statements offered to show the existence of verbal acts or to show the effect on English of the conversation between Ward and English, *i.e.*, that certain information was communicated to English.

The record indicates that in ruling on the admissibility of the subject statements at trial, the trial court was concerned with the potential prejudicial effect of Ward testifying about alleged statements by a declarant who was incapable of being cross-examined. In addressing defendants' argument raised in their motion for judgment notwithstanding the verdict, that it was error not to allow the testimony at issue, the trial court cited this court's opinion in *State v. Blevins* (1987), 36 Ohio App.3d 147, 521 N.E.2d 1105, for the proposition that evidence of verbal acts is admissible only where the conduct to be explained is equivocal, and where the probative value of such evidence outweighs its prejudicial effect. The trial court, which permitted defendants at trial to introduce evidence that Ward communicated correct information to Samuel English regarding the beneficiaries of the Jackson National policy, concluded that there was no evidence presented to indicate that the conduct of Ward was ambiguous; rather, the court noted that the testimony of Ward was that he clearly told Samuel English the true identity of the beneficiaries.

The admission or exclusion of relevant evidence lies within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343. Pursuant to Evid.R. 403(A), evidence, although relevant, "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Further, under Evid.R. 403(B), relevant evidence may be excluded by a trial court "if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Upon review of the record, we find that the trial court did not abuse its discretion in excluding the evidence at issue. Even assuming that the trial court erred in excluding testimony which may have constituted nonhearsay statements, any error by the court was nonprejudicial inasmuch as the basic substance of the proffered statements was cumulative of evidence presented at trial through other testimony.

Defendants proffered at trial that a conversation between English and Ward on August 22, 1988 would have indicated that Ward informed English that he was unsure as to the beneficiaries under the Jackson National policy. Defendants further proffered that English responded that he had the policy at home and that

he would check it. Defendants assert that this evidence was relevant, not to show that English actually checked his policy, but rather to establish that English had knowledge that Ward was uncertain as to the beneficiaries of the Jackson National policy.

Such evidence concerning the issue of English's purported knowledge, however, was before the jury. The testimony of Ward indicated that he went to English's office on August 22, 1988, after receiving a call from English requesting information regarding his life insurance policies. Ward testified that he brought a letter and a copy of the letter to English's office. Ward testified that he told English that the letter contained a "rough draft" and that he was not sure about information concerning the Jackson National policy. Ward indicated that he marked in the margin of his copy of the letter the notation "not sure, will check." Ward testified that English saw him make the notation. Concerning the Jackson National policy, Ward testified that he told English, "I thought that was the way it was, but I wasn't sure, and that I would call Jackson National Life to double-check to make sure."

Defendants also contend that a conversation occurring shortly after August 26, 1988 between English and Ward, which was proffered at trial, would have indicated that English informed Ward that the information in the letter of August 22, 1988 was incorrect and that Vendetta English was actually a fifty-percent beneficiary. Defendants proffered that English responded that he had checked the policy and wanted to leave the policies the way they were. Defendants make a similar contention concerning alleged responses of Samuel English during a telephone conversation with Ward on September 19, 1988. Defendants proffered at trial that during this conversation Ward asked Samuel English whether he wished to make any changes under the Jackson National policy and that English responded, "[l]eave that alone." Again, defendants assert that the proffered responses were not offered by defendants to prove that Samuel English actually checked his policy or that he actually intended for the policy to remain unchanged. Rather, defendants maintain that they sought to introduce the evidence to show that English had knowledge that the information in the August 22, 1988 letter was inaccurate.

Plaintiffs argue that the proffered responses of Samuel English do not demonstrate that English knew the true beneficiaries of the Jackson National policy. Instead, plaintiffs contend, the responses only indicate that Samuel English checked his policy and decided to leave the beneficiaries as described in the policy.

Although the proffered responses were excluded by the trial court, the record indicates that defendants presented evidence to indicate that Samuel English had knowledge that the information in the August 22, 1988 letter was incorrect. As

noted above, Ward testified that he informed Samuel English, at the time Ward prepared the August 22, 1988 letter, that the information may not have been correct. Ward further testified that subsequent to the conversation on August 22, 1988, he checked with the Jackson National regional office concerning the Jackson National policy. Ward testified that after talking to the regional office, he went to Samuel English's office and informed English that the beneficiaries on the policy were not the same beneficiaries as indicated in the letter of August 22, 1988. Further, at trial, defendants called English's son, Michael English, to testify as on cross-examination. Michael English testified that following his father's death he spoke to Ward concerning the August 22, 1988 letter. Michael English testified that Ward related to him that after checking on the Jackson National policy he (Ward) went to Samuel English and informed him that Vendetta English was a fifty-percent beneficiary on the Jackson National policy.

Concerning the alleged telephone conversation on September 19, 1988, Ward testified that he had called Samuel English on that date and asked English whether he wanted to change the beneficiaries on any of his life insurance policies. Ward testified that based upon the response he received, he prepared a change of beneficiary form for Pamela Merrill to pick up regarding the Universal Guaranty policy which had originally listed Vendetta English as a beneficiary. Ward further testified that he spoke with English during this conversation concerning the Jackson National policy. Ward stated that "I * * * asked Sam if he wanted to do anything about the Jackson Life policy. And from his response, I didn't do anything." In light of the above evidence, the proffered statements at issue were merely reflective of evidence presented to the jury at trial.

Defendants' contention that they were prejudiced by the trial court's ruling concerning the testimony of Larry Braun is unpersuasive. At trial, defendants called Braun, an insurance agent employed at the Ward Insurance Agency, to testify concerning the September 19, 1988 telephone conversation between Ward and Samuel English which Braun allegedly overheard. More specifically, Braun testified that in September 1988 he was called into Ward's office to sit in on a telephone conversation. Braun testified that the subject matter of the conversation concerned beneficiary designations on several life insurance policies. Braun testified that he was only listening to Ward's end of the conversation and that he did not hear anything related by the individual on the other end of the telephone line.

While defendants were permitted to allow Braun to testify that he sat in on a telephone conversation, the trial court did not allow Braun to testify as to what he heard Ward say during the conversation. The trial court, in noting that Braun was not a party to the conversation, determined that the admission of such testimony would constitute double hearsay. We find no error by the trial court.

Apart from hearsay considerations, such evidence, even assuming it to be admissible, would have added nothing to Ward's own testimony at trial concerning this telephone conversation.

Defendants further contend that the trial court erred in failing to admit certain portions of the deposition testimony of Vendetta English at the trial. The record indicates that Vendetta English was unavailable to testify at trial for medical reasons, and thus it was anticipated by the parties before trial that previously obtained deposition testimony of Vendetta English would be offered before the jury. Prior to trial, plaintiffs filed a motion *in limine*, seeking an order from the trial court striking from the deposition any references by Vendetta English to conversations she had with her late husband. Portions of the deposition testimony of Vendetta English were read to the jury during defendants' case. The trial court, however, precluded deposition testimony concerning conversations between Vendetta English and Samuel English. Defendants proffered the excluded evidence.

In support of their motion *in limine* before the trial court, plaintiffs cited from the language of R.C. 2317.02, which provides in relevant part:

"The following persons shall not testify in certain respects:

" * * *

"(D) Husband or wife, concerning any communication made by one to the other, or an act done by either in the presence of the other, during coverture, unless the communication was made, or act done, in the known presence or hearing of a third person competent to be a witness; and such rule is the same if the marital relation has ceased to exist."

In the trial court's decision and entry overruling defendants' motion for judgment notwithstanding the verdict and/or new trial, the trial court noted that it was defendants' contention at trial that the proffered deposition testimony was not intended to be confidential because the children (plaintiffs) were well aware of the matters discussed. The trial court found that no evidence had been presented indicating that the plaintiffs were aware of what Samuel English purportedly told his wife. We find the trial court's determination on this issue to be supported by the record.

The trial court's decision further addressed defendants' contention that plaintiffs lacked standing to invoke the marital privilege. The court determined

that although the privilege is personal to the parties[4] (*i.e.*, the privilege may not be raised by a third party), the privilege survives the termination of the marriage by death, under which circumstances either the decedent's representative or heirs may raise the privilege. The trial court, in noting that plaintiff Pamela Merrill was the executor of her father's estate, as well as an heir, concluded that the privilege was properly raised in this case by plaintiffs.

We note that neither side has cited, nor has our research discovered, any Ohio case law directly addressing the above issue. Support for the trial court's determination, however, is provided by one commentator, who states that in jurisdictions in which both spouses are holders of the privilege, "the party seeking to introduce a privileged statement must secure a waiver from both spouses or, in the case of a holder's death, from the successor in interest (usually the executor or administrator) of the deceased." Lilly, An Introduction to the Law of Evidence (2 Ed.1987) 390, Section 9.3. We cannot conclude that the trial court erred in excluding the deposition testimony at issue.

Based upon the foregoing, defendants' third assignment of error is not well taken and is overruled.

Under the fourth assignment of error, defendants assert that the trial court erred in admitting the will of Samuel English at trial.

Prior to trial, defendants filed a motion *in limine* to exclude from evidence the last will and testament of Samuel English. The basis for the motion was relevancy grounds or, in the alternative, that the probative value of the contested evidence was outweighed by the danger of unfair prejudice pursuant to Evid.R. 403(A). The trial court subsequently permitted the will to be admitted on the grounds that the admission of the will would have some relevance as to what Samuel English knew and believed.

In general, the question of admissibility of evidence is a matter within the discretion of the trial court and such discretion will not be set aside by a reviewing court absent an abuse of discretion. *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444; *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 219–220, 24 O.O.3d 322, 323–324, 436 N.E.2d 1008, 1010.

We find no abuse of discretion by the trial court in allowing admission of the will at trial. Defendants reiterate their earlier contention that, under the law of negligent misrepresentation, it was plaintiffs' reliance, as opposed to any reliance on the part of Samuel English, which had to be proven. Defendants

---

4. In *Diehl v. Wilmot Castle Co.* (1971), 26 Ohio St.2d 249, 55 O.O.2d 484, 271 N.E.2d 261, paragraph three of the syllabus, the court held that the privilege under R.C. 2317.02 "is personal to husband and wife and may not be invoked by a third party."

maintain that the will of Samuel English is irrelevant as to the issue of plaintiffs' reliance in the instant action. As previously discussed, we disagree with defendants' contention that evidence of the reliance by the decedent was not relevant to plaintiffs' action. In the present case, the will was admissible on the issue of Samuel English's intent relative to the disposition of his life insurance proceeds. The language of the will was consistent with evidence indicating that it was Samuel English's intent to have the life insurance proceeds go to his children rather than to his wife. Further, the will was admissible as tending to disprove defendants' claim that the correct information concerning the beneficiaries of the Jackson National policy was provided to Samuel English subsequent to the August 22, 1988 letter.

Accordingly, defendants' fourth assignment of error is not well taken and is overruled.

██ Under the fifth assignment of error, defendants contend that the trial court erred by denying defendants' motion for summary judgment based upon the affirmative defense of release and by failing to allow defendants to introduce at trial certain releases signed by plaintiffs.

The record indicates that in December 1988, each of the plaintiffs in this action signed a release form which stated, in pertinent part, the following:

"IN CONSIDERATION of the sum of $15,138.09 * * * to be paid by JACKSON NATIONAL LIFE INSURANCE COMPANY * * * the receipt whereof is hereby acknowledged, I hereby remise, release and forever discharge the said JACKSON NATIONAL LIFE INSURANCE COMPANY, its agents, brokers, employees and directors, of and from all, and all manner of action and actions, cause and causes of action, suits, proceedings, debts, dues, sums of money, covenants, contracts, controversies, agreements, promises, variances, liabilities, damages, judgements, extents, claims and demands whatsoever in law or equity, which against the said JACKSON NATIONAL LIFE INSURANCE COMPANY I ever had, now have, or which myself, my heirs, executors, administrators and assigns hereafter can, shall, or may have for or by reason of any matter, cause, or thing whatsoever, arising out of or by reason of or in connection with Policy No. * * * wherein Samuel D. English is designated as the insured. * * *"

On October 24, 1990, defendants filed a motion for summary judgment with the trial court, asserting that each plaintiff knew, at the time he or she signed the release form, that there was a conflict between the August 22, 1988 letter and the Jackson National insurance policy. Defendants argued in their motion before the court that the existence of the dispute constituted sufficient consideration for the releases to be enforced and, thus, as a matter of law, the releases precluded plaintiffs from pursuing this action. By decision dated December 17, 1990, the

trial court overruled defendants' motion with respect to the individual plaintiffs,[5] finding that there was no consideration given in exchange for the releases.

The trial court did not err in its finding regarding the issue of consideration. Under the terms of the Jackson National policy, Jackson National was required to pay fifty percent of the proceeds from the policy to the five plaintiffs. The record indicates that, pursuant to the contract, Jackson National paid each plaintiff the sum of $15,138.09. In disbursing the proceeds to plaintiffs, Jackson National did nothing more than fulfill its contractual obligation. Thus, even assuming that plaintiffs had refused to sign the releases, Jackson National would still have been obligated to pay the amounts which were the subject of the releases. As noted in *Rhoades v. Rhoades* (1974), 40 Ohio App.2d 559, 562, 69 O.O.2d 488, 490, 321 N.E.2d 242, 245:

"It is elementary that neither the promise to do a thing, nor the actual doing of it will constitute a sufficient consideration to support a contract if it is merely a thing which the party is already bound to do, either by law or a subsisting contract with the other party."

Accordingly, there was no error by the trial court's determination that no consideration had been given for the execution of the releases.

Defendants further contend that the trial court erred by failing to admit at trial the releases signed by the plaintiffs. Defendants argued during the trial that the releases were relevant to the issue of credibility of the plaintiffs. Defendants contend before this court that had they been permitted to offer the releases into evidence, defendants would have questioned plaintiffs regarding their knowledge of a dispute as to the amount due them under the Jackson National policy at the time the releases were executed. Presumably, defendants sought to elicit testimony from the plaintiffs to the effect that plaintiffs did not believe that Ward was negligent at the time plaintiffs signed the release forms and received the proceeds from the Jackson National policy. The record indicates, however, that counsel for defendants questioned both Pamela Merrill and Michael English on cross-examination concerning their thoughts at the time they received the proceeds of the Jackson National policy from Ward. More specifically, both witnesses were questioned about whether they had concerns at that time regarding the manner in which Ward handled their father's insurance affairs. Defendants have failed to show prejudicial error based upon the trial court's exclusion of the releases at trial.

Defendants' fifth assignment of error is not well taken and is overruled.

---

5. As previously noted in the facts, the trial court sustained defendants' motion to dismiss as to the estate of Samuel English.

Under the sixth assignment of error, defendants assert that the trial court erred in denying defendants' motion for judgment notwithstanding the verdict or, in the alternative, new trial. Under this assignment of error, defendants do not raise any new arguments; rather, defendants note that all of their previous assignments of error were addressed in their motion for judgment notwithstanding the verdict and/or new trial before the trial court, and that in applying the applicable standards, the trial court committed reversible error in failing to grant either of defendants' motions.

The standard for granting a judgment notwithstanding the verdict is the same as for a directed verdict. *McNees v. Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269, 40 O.O. 318, 89 N.E.2d 138. In addressing defendants' first and second assignments of error, we concluded that the trial court did not err in finding that plaintiffs presented sufficient evidence on the elements of negligent misrepresentation to avoid a directed verdict. We further find that the trial court did not err in denying defendants' motion for judgment notwithstanding the verdict.

In *Monroe v. Ohio Dept. of Corr.* (1990), 66 Ohio App.3d 236, 240, 583 N.E.2d 1102, 1104, this court noted the applicable standard of review in ruling upon a motion for a new trial:

"Generally, a new trial may be granted for errors grounded in law or fact. * * * A new trial granted on sufficiency of the evidence grounds represents an issue of fact. Under these circumstances, the trial court is vested with broad discretion since the trial court must review the evidence and itself pass upon the credibility of the witnesses. Therefore, the trial court is in the best position to decide an issue of fact. For this reason, a trial court's decision to overrule a motion for new trial on a factual basis will only be overturned on a showing of abuse of discretion. * * * That is, the party claiming error must demonstrate that the trial court's attitude was unreasonable, arbitrary, or unconscionable. * * *" (Citations omitted.)

Concerning defendants' contention that the trial court erred in failing to grant their motion for a new trial, we have previously discussed the evidence presented by plaintiffs at trial and we will not restate that evidence here. While defendants presented contrary evidence, including Ward's testimony that he informed Samuel English of the true beneficiaries on the Jackson National policy, it was within the province of the jury to accept or reject defendants' evidence. Based upon the verdict, the jury obviously chose not to accept Ward's testimony. The credibility of witnesses and the weight to be attributed to their testimony are matters primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Because there was sufficient evidence to support

the verdict in this case, the trial court did not abuse its discretion in overruling defendants' motion for a new trial.

Defendants' sixth assignment of error is not well taken and is overruled.

Given our disposition of the assignments of error raised by defendants, plaintiffs have failed to show prejudice under their assignment of error on cross-appeal. Accordingly, plaintiffs' single assignment of error is overruled.

Based upon the foregoing, defendants' assignments of error are overruled, plaintiffs' assignment of error on cross-appeal is overruled, and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

WHITESIDE and PETREE, JJ., concur.