*115 MANSFIELD, Justice
(dissenting).
I respectfully dissent. For the reasons stated herein, I would affirm the well-reasoned decision of the court of appeals.
I. The Majority Incorrectly Eliminates the Previous Legal Requirement that the Plaintiffs Status as Intended Beneficiary of the Asset Had to Appear in the Decedent’s Written Documentation.
The majority’s opinion is an unwarranted expansion, not an application, of existing Iowa law. In Schreiner v. Scoville, we held that an attorney who drafted a will leaving an interest in property to a beneficiary could be liable in negligence for failing to take additional steps to protect the beneficiary’s interest when the property was sold before the testator died. 410 N.W.2d 679, 688 (Iowa 1987). We said that “a lawyer owes a duty of care to the direct, intended, and specifically identifiable beneficiaries of the testator as expressed in the testator’s testamentary instruments.” Id. at 682 (emphasis added). We further stated, “If the testator’s intent, as expressed in the testamentary instruments, is fully implemented, no further challenge will be allowed.” Id. at 683.
We reaffirmed the same basic limitation in Holsapple v. McGrath, 521 N.W.2d 711, 713-14 (Iowa 1994). There we held the named grantees of a quitclaim deed could sue the attorney who prepared the deed but negligently failed to have it notarized. Id. While indicating that Schreiner could be applied to inter vivos as well as testamentary transfers, we also quoted the language from Schreiner that the plaintiff had to be a “ ‘specifically identifiable’ beneficiary ‘as expressed in the testator’s testamentary instruments.’” Id. at 713 (quoting Schreiner, 410 N.W.2d at 682). We said that more than
an unrealized expectation of benefits must be shown; a plaintiff must show that the testator (or here, the grantor) attempted to put the donative wishes into effect and failed to do so only because of the intervening negligence of a lawyer.
Id.; see also Carr v. Bankers Trust Co., 546 N.W.2d 901, 906 (Iowa 1996) (noting that in Holsapple “the claimants were specifically identified and the extent of their interest was known [and that t]he claimants were undisputably the objects of the clients’ donative intent”). In short, prior Iowa law allowed negligence claims by putative beneficiaries only to the extent the plaintiffs status as intended recipient of the property was revealed in the written instrument.
The majority changes that law. It does so by removing the limitation that the intent to provide for the beneficiary must have been “expressed in” the written instrument. See Holsapple, 521 N.W.2d at 713. In this case, the life insurance policy concededly left the $35,000 to Tom’s daughter, not Michele. The daughter, not Michele, was the “expressed” beneficiary of the $35,000. Nothing in the transaction documents indicated that Tom intended Michele to receive the $35,000. Thus, we do not have a situation as in Schreiner and Holsapple where a written plan was prepared and thwarted simply due to the negligence of a professional. See Holsapple, 521 N.W.2d at 713 (citing Schreiner, 410 N.W.2d at 682-83). Instead, we have a swearing contest over whether a change to the written plan was requested and over who is to blame for failing to carry that change into effect.
The majority points out that Michele was the designated beneficiary for all but $35,000 of the life insurance proceeds. The majority goes on to emphasize that “the plaintiff must produce evidence from the written instrument itself that indicates the plaintiff is the intended beneficiary of *116 the policy.” This is a worthwhile limitation. It means that someone who is not referred to in the written documentation as a beneficiary will not have a cause of action. But it does not erase the fact that the majority is expanding the law. Under our prior law, the salient question was whether the written instrument expressed an intent to make her the beneficiary of the interest at issue, ie., the $35,000. See Carr, 546 N.W.2d at 906. Thus, today’s rule breaks new ground by allowing people to bring negligence claims to increase the amount of their payout over what the written documentation provided. And although the majority’s partial caution is praiseworthy, it is difficult to see the rhyme or reason of a rule that requires some mention in the written documentation as an admission ticket but then permits the plaintiff to argue the admission ticket was a mistake.
Allowing people to file suits alleging that someone who wasn’t their agent negligently failed to arrange for them to receive a benefit — without written proof they were supposed to receive that benefit — will lead to uncertainty and instability. We would be better off sticking to the Schreiner rule that if the intent expressed in the written instrument is fully implemented, no challenge by an alleged beneficiary will be allowed. Schreiner, 410 N.W.2d at 683. Notably, in past instances where persons have been able to sue for failure to be properly designated as insurance beneficiaries, there has almost always been written documentation to establish their status as intended beneficiaries of those proceeds. See United Olympic Life Ins. Co. v. Gunther, No. 92-36710, 1994 WL 96328, *1 (9th Cir. March 24, 1994) (allowing claim for negligence against insurance company where written “Policy Change Request” form was signed by the insured and the insurance company accepted the form, improperly advised insured about requirements for changing the beneficiary, and improperly advised the intended beneficiaries that they were the actual beneficiaries); Jones v. Hartford Life & Accident Ins. Co., 443 F.Supp.2d 3, 7 (D.D.C.2006) (plaintiff alleged that “she was the named beneficiary” under the policy); Sun Life Assurance of Can. v. Barnard, 652 So.2d 681, 685 (La.Ct.App.1995) (holding that an insurance agent could be liable to an intended beneficiary of a life insurance policy when the change of beneficiary form had been executed but was not valid because the agent failed to date it properly).
The only exception to that pattern cited by the majority is Parlette v. Parlette, a decision of Maryland’s intermediate appellate court. 88 Md.App. 628, 596 A.2d 665, 670-71 (Md.Ct.Spec.App.1991). That case involved some unique facts. The son of divorced parents purchased a life insurance policy from the father, an insurance agent. Id. at 667. The son died three years later, and the mother learned at that point that the father was the designated beneficiary. Id. Various friends and siblings of the son informed the mother that the son had actually intended her to receive the benefits of the policy. Id. An eyewitness reported that he was present when the father had sold the policy to the son and that the father had said he would make the mother the beneficiary. Id. at 668. According to the witness, the son signed a blank application, but the father later filled in his own name as beneficiary. Id.
The mother sued the father (her ex-spouse) for fraud and negligence, among other claims. Id. at 667-68. The court held that the negligence action could proceed to the jury. Id. at 670. Although Parlette did not involve written documentation showing that the mother was supposed to be the beneficiary, it has several distinctive facts. The agent was not disinterested but was in a position to receive *117 the proceeds if the mother did not. Id. at 667. Also, there was eyewitness testimony, not from the mother herself, to the effect that that the father-agent had essentially tricked the son and the mother. Id. at 668. Nothing like those facts is present here.
Meanwhile, there is a substantial body of law declining to allow “intended beneficiaries” to maintain negligence actions against life insurance agents. See, e.g., Jackson Nat’l Life Ins. Co. v. Cabrera, 48 Fed.Appx. 618, 619-20 (9th Cir.2002) (holding any duty that arose out of conduct by the life insurer’s agent was a duty to the insured as the owner of the policy, not to the purported beneficiaries of the policy); Smith v. Equifax Servs., Inc., 587 So.2d 468, 464 (Ala.1988) (“[A] beneficiary named in a pending insurance application does not have a right to maintain an action against an insurance company for negligently processing an insurance application.” (citation and internal quotation marks omitted)); State ex rel. William Ranni Assocs., Inc. v. Hartenbach, 742 S.W.2d 134, 140-41 (Mo.1987) (holding that beneficiaries of a life insurance policy were merely incidental beneficiaries who were not owed any duties by the agent); cf. Rihon v. Wilson, 415 So.2d 94, 95-96 (Fla.Dist.Ct.App.1982) (dismissing negligence action brought by additional insured under automobile liability insurance policy against insured’s agent); Workman v. McNeal Agency, Inc., 217 Ga.App. 686, 458 S.E.2d 707, 709 (1995) (finding that a plaintiff who alleged that she should have been named on a liability policy as an additional insured could not maintain a negligence action against the agent). None of those cases are discussed by my colleagues.
If suits by “intended beneficiaries” are going to be allowed, there are good reasons to limit them to situations where documentary proof exists that the plaintiff was the intended beneficiary of the proceeds at issue. The insured is no longer around to speak to his or her own intent. All we know for certain is that the insured did not make a legally valid designation of the plaintiff as beneficiary. A documentary proof requirement, as we recognized in Schreiner and Holsapple, protects a legally binding document from being circumvented by an opportunistic claim that the decedent intended otherwise. If negligence law can be used without limitation to modify the beneficiaries set forth in a written instrument, then the instrument is drained of much of its legal force.
It makes sense for the life insurance company to require the change in beneficiary to be made in writing. This avoids competing claims to the same proceeds. It also avoids fraudulent claims. Allowing a negligence recovery without written documentation as to the proceeds at issue permits an end run around the contractual safeguard of requiring the change to be in writing. The result is to expose the insurer to potentially paying twice on the same death claim. Here, the daughter as the named beneficiary collects the $35,000 while another $35,000 must be paid to the widow as the “intended” beneficiary if she wins her negligence claim.
Moreover, while Farm Bureau and the agent, Schiffer, are separate parties in this case, many life insurance policies are sold by captive agents employed by the insurer. Could today’s majority holding apply equally to captive agents? Again, the negligence claim based on mere oral testimony eviscerates the otherwise enforceable contract requirement that changes to the beneficiary designation must be in writing.
Here, we do not really know whether Tom Pitts still wanted his daughter to get the $35,000 upon his death and never executed the written change form for that reason. He may have been mulling over the matter in his own mind or stalling on having a difficult discussion with his wife. *118 This speculation and the risk of overtly fraudulent claims are avoided by requiring written proof that Tom intended to replace his daughter with his wife for that $85,000.
I also disagree with the majority’s view that there is no potential for conflicts of interest. See generally J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C., 589 N.W.2d 256, 264 (Iowa 1999). Agents are supposed to serve their principals. Once a legal obligation is imposed to protect the interests of beneficiaries as well, the agent must of necessity balance the wishes of the principal against the possibility of a disappointed alleged beneficiary. For example, suppose an insured tells an agent in the presence of his wife to make his wife the sole beneficiary of a life insurance policy. Later, however, he tells the agent to have his daughter remain as partial beneficiary and not to tell the wife he has done that. The agent is now in a quandary because obeying the insured’s instructions places the agent at risk of a lawsuit.
The majority dismisses this concern by stating that Michele is not asserting a duty based on her status as a family member but as an intended beneficiary, “a much more circumscribed group.” I fail to see how this eliminates the potential for conflict of interest.
II. The Economic Loss Rule Should Preclude the Existence of a Duty in This Case.
The majority’s ruling also carves out an unwarranted exception to the economic loss rule. “As a general proposition, the economic loss rule bars recovery in negligence when the plaintiff has suffered only economic loss.” Annett Holdings, Inc. v. Kum & Go, L.C., 801 N.W.2d 499, 508 (Iowa 2011).[9]
In Annett Holdings, we reiterated the “well-established general rule ... that a plaintiff who has suffered only economic loss due to another’s negligence has not been injured in a manner which is legally cognizable or compensable.” Id. at 503 (citation and internal quotation marks omitted). We further explained that the rule “is by no means limited to the situation where the plaintiff and the defendant are in direct contractual privity.” Id. at 504. “[T]he stranger economic loss rule” applies to cases where the plaintiff sues the defendant seeking recovery of pure economic losses suffered due to the defendant’s negligent performance of a contract with a third party. Id. (“In a complex society such as ours, economic reverberations travel quickly and widely, resulting in potentially limitless liability.”). We also noted three qualifications to the economic loss rule: (1) “actions asserting claims of professional negligence against attorneys and accountants”; (2) “negligent misrepresentation claims”; and (3) “when the duty of care arises out of a principal-agent relationship.” Id. Michele’s general negligence claim falls into none of these exceptions. She is not asserting a professional negligence claim, nor is she alleging that she was a principal to whom an agent breached a duty.[10]
*119 At the same time, Michele’s negligence claim shares the characteristics of claims that we have historically rejected under the economic loss rule. It is remote. Plaintiffs theory is that the agent negligently failed to perform his agency agreement with Tom, thereby resulting in Tom failing to effectuate a beneficiary change, thereby resulting in economic loss to Michele. Historically, this court has held that remote parties alleging pure economic loss may not recover on a negligence theory. See, e.g., id,.; State ex rel. Miller v. Philip Morris Inc., 577 N.W.2d 401, 406-07 (Iowa 1998); Anderson Plasterers v. Meinecke, 543 N.W.2d 612, 613 (Iowa 1996); Tomka v. Hoechst Celanese Corp., 528 N.W.2d 103, 107 (Iowa 1995); Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp., 345 N.W.2d 124, 127-30 (Iowa 1984). It is also an attempt to bypass one or more contracts. See, e.g., Annett Holdings, 801 N.W.2d at 503-05; Determan v. Johnson, 613 N.W.2d 259, 262-63 (Iowa 2000); Preferred Mktg. Assocs. Co. v. Hawkeye Nat’l Life Ins. Co., 452 N.W.2d 389, 397 (Iowa 1990); Nelson v. Todd’s Ltd., 426 N.W.2d 120,125 (Iowa 1988); Richards v. Midland Brick Sales Co., 551 N.W.2d 649, 650-52 (Iowa Ct.App.1996). As noted by the district court, Tom entered into an insurance policy with Farm Bureau that placed specific requirements on what must be done to change a beneficiary. Also, Tom had a principal — agent relationship with his insurance agent, Schiffer, and his estate would have the ability to sue for breach of duties arising out of that basic agreement. This action is essentially an effort by his widow to avoid the effects of these two agreements.
The economic loss rule recognizes that many events may have a ripple effect leading to financial consequences in our complex society and generally honors the allocation of those risks by contract. “Th[e] rule is partly intended to prevent ... the tortification of contract law.” Annett Holdings, 801 N.W.2d at 503. When physical harm occurs, or when antisocial conduct such as fraud takes place, we have generally provided the injured party with a set of judge-made rules of recovery— those of tort law. But in dealing with mere economic loss, our judicial system has historically allowed the parties to fix the rules themselves through consensual arrangements, i.e., contracts.
The unfortunate side effect of the majority’s ruling is to give a nonparty to a contract more rights than a party to the contract would have. Tom’s estate could not have sued Farm Bureau because he failed to execute and return a new beneficiary designation form. Farm Bureau honored its contract with Tom. Yet now a putative beneficiary can effectively modify those contractual obligations through the device of a tort suit.
The majority correctly notes that the duty analysis in Thompson v. Kaczinski, 774 N.W.2d 829, 834-36 (Iowa 2009), does not apply to economic loss claims. But it errs in asserting (without citing a single Iowa authority) that “[t]he critical element in establishing a duty is the foreseeability of harm to a potential plaintiff.” If a remote party could sue over any “foreseeable” economic loss resulting from the negligence of another party, our common law would be turned upside down. I say upside down because our precedents actually recognize something like the opposite principle. Nelson, 426 N.W.2d at 125 (where the damage was a foreseeable result from *120 a failure of the product to work properly, the remedy lies in contract); Richards, 551 N.W.2d at 651 (same). Certainly, the losses that occurred in many if not all the economic loss cases cited above were foreseeable. See, e.g., Neb. Innkeepers, 845 N.W.2d at 126 (harm to business owners from bridge closure).
I recognize that the majority’s holding appears to be limited to insurance agents. But there is no reason to deviate from the economic loss rule here.
III. The Majority’s Opinion Is Inconsistent with Recent Legislation.
As noted by the court of appeals, while this case was on appeal the General Assembly enacted the following legislation:
7. a. Unless an insurance producer holds oneself out as an insurance specialist, consultant, or counselor and receives compensation for consultation and advice apart from commissions paid by an insurer, the duties and responsibilities of an insurance producer are limited to those duties and responsibilities set forth in Sandbulte v. Farm Bureau Mut. Ins. Co., 343 N.W.2d 457 (Iowa 1984).
b. The general assembly declares that the holding of Langwith v. Am. Nat’l Gen. Ins. Co., (No. 08-0778) [793 N.W.2d 215] (Iowa 2010) is abrogated to the extent that it overrules Sandbulte and imposes higher or greater duties and responsibilities on insurance producers than those set forth in Sandbulte.
2011 Iowa Acts ch. 70, § 45 (emphasis added) (amending Iowa Code § 522B.11 (2009)).
Sandbulte had set forth a bright-line rule that an insurance agent does not owe a duty to advise his or her client regarding the client’s insurance needs unless “the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured.” 343 N.W.2d at 464. Lang-with overruled Sandbulte and decided that the scope of an insurance agent’s duties to his or her client would be based on a consideration of all the circumstances. 793 N.W.2d at 222. The 2011 legislation, in turn, negated the Langwith holding and expressly provided that “the duties and responsibilities of an insurance producer are limited to those duties and responsibilities set forth in Sandbulte.” 2011 Iowa Acts ch. 70, § 45 (emphasis added).
The specific issue in both Langwith and Sandbulte was the extent of the agent’s duties to his or her client. Sandbulte had reiterated an earlier holding that agents have a duty “to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured.” 343 N.W.2d at 464 (citing Collegiate Mfg. Co. v. McDowell’s Agency, Inc., 200 N.W.2d 854, 858 (Iowa 1972)). Langwith allowed for the possibility of a more extensive duty. 793 N.W.2d at 219-223. This case concerns the agent’s duties (if any) to a nonclient. Still, a case can be made that the 2011 legislation freezes the duties and responsibilities of agents to those set forth in Sandbulte, which did not mention any duties to nonclients. The court of appeals took a contrary view that this case is not controlled by the 2011 legislation because it involves the same general duty of care articulated in Sandbulte, the only question being whether that duty may extend to an intended beneficiary of an insurance policy-
What is not debatable, however, is that the majority opinion recognizes a duty on the part of insurance agents that has not heretofore been recognized in Iowa. In 2011, the legislature put up a stop sign after we modified our previous law of agent’s duties based on the Restatement (Third) of Agency and a much larger and *121 more persuasive body of authority than my colleagues have cited here. Langwith, 798 N.W.2d at 220-23. At a minimum, further expansion of legal liability should be backed by something more than the sprinkling of caselaw and treatise citations in the majority opinion; otherwise, the public policy in this area is best left to the legislature. See Galloway v. State, 790 N.W.2d 252, 259 (Iowa 2010) (Cady, J., dissenting) (stating that unless the public policy is clear and apparent, “public policy is best left to our legislative branch of government to decide as representatives of the people”).[11]
IV. Under the Majority’s Own Reasoning, There Is No Basis for a Negligent Misrepresentation Claim.
The majority engages in a thorough and accurate review of our negligent misrepresentation precedents. Ultimately, though, its analysis is undermined by a lack of conceptual clarity.
The majority has correctly described the two forks in the road. Generally speaking, if A (or A’s agent) negligently provides false information to B to guide B in a transaction with C, then a potential negligent misrepresentation claim may lie. However, if A (or A’s agent) negligently provides false information to B in a transaction with A, then this is the classic situation involving only two parties where the tort of negligent misrepresentation is not available. See generally Sain v. Cedar Rapids Cmty. Sch. Dist., 626 N.W.2d 115, 125-26 (Iowa 2001).
According to the majority: “When Schif-fer allegedly advised Tom and Michele that Tom’s daughter was no longer the primary beneficiary on the policy, he was functioning as Tom’s agent.” I agree that to the extent Sehiffer made a negligent misrepresentation in his capacity as Tom’s agent to Tom regarding the status of beneficiaries, a potential claim for negligent misrepresentation by Tom (or his estate) may lie. In this scenario, Sehiffer is like the guidance counselor in Sain. Id. at 126-28. He was supplying information, as insurance agents do, to his client Tom to guide Tom in a transaction with a third party, namely Farm Bureau. Id.
However, the majority’s reasoning does not support a negligent misrepresentation claim by Michele. Michele had no ability to designate beneficiaries under the life insurance policy. The only action she could have taken was to try to influence Tom to take some action. Thus, any statements made to her by Sehiffer as Tom’s agent were not statements for her guidance in dealings with someone else; they were statements for her guidance in dealings with Tom. See id. at 126. Put another way, could Michelle have sued Tom for negligently misrepresenting that she was going to receive the $35,000? Clearly not. Therefore, she cannot sue a person who was making statements on Tom’s behalf either. See Haupt v. Miller, 514 N.W.2d 905, 910 (Iowa 1994) (finding that the motions to dismiss filed by individuals who allegedly made negligent misrepresentations in their capacity as officers and di *122 rectors of the party on the other side of the transaction from the plaintiff should have been granted).[12]
The majority cites a treatise to try to suggest that its position is within the legal mainstream. See 1 Jeffrey E. Thomas & Francis J. Mootz, New Appleman on Insurance Law Library Edition § 2.05[2][d][i], at 2-33 to 2-34 (2011). However, this treatise discussion is part of a section entitled, “Intermediaries’ Liability to Insureds.” Id. at 2-28. The only actual case cited by the majority where a putative beneficiary was allowed to sue the insured’s agent is Merrill v. William E. Ward Ins., 87 Ohio App.3d 583, 622 N.E.2d 743 (1993). That case involved somewhat exceptional facts. After being diagnosed with a fatal illness, the decedent executed a will leaving the proceeds of his insurance policies to his children. Merrill, 622 N.E.2d at 746. At the same time, he executed a change of beneficiary form for one of the insurance policies deleting his wife as beneficiary. Id. However, the decedent’s insurance agent had written a letter which stated incorrectly that the wife was not a beneficiary of another policy. Id. at 745-46. No change of beneficiary occurred as to that policy. Id. Following the decedent’s death, the children discovered what had happened and sued the agent for negligent misrepresentation. Id. at 746. The Ohio Court of Appeals held that the children’s negligent misrepresentation claim could go to the jury. Id. at 748-50. The decision strikes me as somewhat result-oriented. The court concedes that the children could not have relied on the agent’s misrepresentations, but without citation of authority concludes that “evidence of decedent’s reliance is sufficient to impose liability for defendants’ negligent misrepresentation.” Id. at 749-50.[13]
Finally, even if I agreed with the majority that Michele could bring a negligent misrepresentation claim against Schiffer, the majority cannot credibly explain why it does not affirm summary judgment for Farm Bureau on that claim. According to the majority, Schiffer was acting as Tom’s agent; indeed, that is essential to the majority’s analysis. So there is no basis for Farm Bureau to be vicariously liable for Tom’s conduct under respondeat superior.
For the foregoing reasons, I dissent and would affirm the dismissal of the negligence and negligent misrepresentation claims.
CADY, C.J., and WATERMAN, J., join this dissent.

. The majority points out that Farm Bureau failed to make a specific argument concerning the economic loss rule. I do not believe that was necessary because the economic loss rule is simply an aspect of the overall duty question that is at the core of this case. In my view, we should proceed to apply the proper law to the duty question, including the economic loss rule. However, given the majority’s decision to reserve the application of the economic loss rule to the present facts for another day, I simply make these comments to set forth my views at this time.

. The relationship between an intended beneficiary and an insurance agent is not one of principal/agent. “Agency ... results from (1) manifestation of consent by one person, the principal, that another, the agent, shall act on the former’s behalf and subject to the former's control and, (2) consent by the latter to so act.” Pillsbury Co. v. Ward, 250 N.W.2d *119 35, 38 (Iowa 1977); see also Peak v. Adams, 799 N.W.2d 535, 547 n. 2 (Iowa 2011).
Apart from her general negligence claim, Michele has a separate negligent misrepresentation claim, which is defective for reasons I discuss below.

. The majority’s conclusion regarding duty is also contrary to a venerable precedent of this court. In Duffie v. Bankers’ Life Ass’n of Des Moines, the widow of a life insurance applicant brought an action as designated beneficiary in the application alleging that the insurer’s negligent delay in processing the application deprived her of the insurance policy proceeds. 160 Iowa 19, 21, 139 N.W. 1087, 1087-88 (Iowa 1913). She also filed a petition as administratrix. . Id. at 19, 139 N.W. at 1087. We held that she could pursue the negligence claim on behalf of the estate but could not maintain her negligence action as beneficiary because "the negligence, if any, was that of failing to discharge a duty owing the deceased.” Id. at 29, 139 N.W. at 1090.

. I acknowledge that terms like "arm’s length” and "adversarial” would not apply to Schiffer’s alleged conversations with Tom and Michele. See Sain, 626 N.W.2d at 126. But just as we emphasized in Sain that negligent misrepresentation can exist as a cause of action even when there is no business transaction, id. at 125-26, so it also needs to be emphasized that what matters is the alignment of the parties — i.e., did the information supplied "harm[ ] the plaintiff in its relations with third parties, as opposed to harm to a plaintiff in its relations with the provider of the information”? Id. at 126. When the transaction is not a business transaction, we are not going to see typical arm’s length behavior. It would be incongruous of us to relax the "business transaction” element of negligent misrepresentation in Restatement (Second) of Torts § 522, while strictly requiring "arm’s length” behavior for an exclusion from that tort.

. Notably, there was considerable written documentation to establish the decedent’s intent to make his children the beneficiaries, unlike here. See part I of my dissent, above.