ELIZABETH W. TODD *v.* GERALDINE
MALAFRONTE ET AL.
(2198)

HULL, BORDEN and SPALLONE, Js.

Argued October 12—decision released December 4, 1984

*Paul M. Tymniak,* with whom, on the brief, was *Vicki D. Henry,* for the appellants (defendants).

*Daniel D. Skuret,* with whom, on the brief, was *Ronald T. Stankye,* for the appellee (plaintiff).

SPALLONE, J. The plaintiff, Elizabeth W. Todd, operated a dog kennel business on her property in Beacon Falls. Her home was on the same parcel of land, approximately two hundred feet from the kennel. It was her custom to hire a part-time summer employee to work approximately twenty hours or less per week in the kennel.

In June of 1975, the defendant George Linardos, an insurance agent employed by the defendants Gerald Malafronte and Thomas Keegan,[1] when discussing with the plaintiff her insurance needs, advised her that she did not need to purchase workers' compensation insurance for her part-time summer employee and sold her other insurance. Prior to the plaintiff's renewal of that insurance in 1976 and 1977, the defendant Karen Voos, another insurance agent employed by Malafronte and Keegan, also represented to the plaintiff that workers' compensation insurance was not necessary. In 1977, a part-time summer employee was injured on the plain-

---

[1] The defendants Malafronte and Keegan comprised a partnership doing business as New Haven County Real Estate and Insurance Company and Fairfield County Real Estate and Insurance Company.

The defendant Gerald Malafronte was substituted for Geraldine Malafronte. There appears to be no Geraldine Malafronte connected with this case.

tiff's property and filed a workers' compensation claim. The claim was ultimately settled by stipulation under which the plaintiff paid the employee $2000.

The plaintiff instituted the present suit to recover that amount as well as $3000 in attorney's fees which she incurred in defending the claim. The complaint alleges that the representations by the defendants that the plaintiff did not need workers' compensation insurance were inaccurate and false, and that, in reliance on those representations, the plaintiff did not purchase workers' compensation coverage. Although the complaint sounds in misrepresentation, the case was tried and decided on the theory of negligence. We therefore review this case on the basis on which it was tried and decided. See *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 120, 132, 464 A.2d 6 (1983); *Hallmark of Farmington* v. *Roy,* 1 Conn. App. 278, 280, 471 A.2d 651 (1984).

After a jury trial, a general verdict was returned in favor of the plaintiff in the amount of $5318. Thereafter, the trial court denied the defendants' motion to set aside the verdict. This appeal followed. The defendants claim (1) that the trial court erred in failing to set aside the verdict because neither a standard of care nor a breach of that standard of care were proved by the defendants, (2) that the trial court erred in refusing to set aside the verdict because the plaintiff did not require workers' compensation coverage, and (3) that the trial court erred in excluding evidence concerning the plaintiff's recovery under a commercial liability policy for the same loss.[2]

The defendants initially argue that the trial court erred in sustaining the verdict in the absence of expert testimony to establish the existence of a standard of

---

[2] The defendants raised no claim with regard to the instructions to the jury which, at oral argument before this court, they conceded were correct.

care which applied to them. They contend that, as insurance agents, their conduct must conform to a professional standard. Relying on the fact that insurance agents receive extensive training and must pass a state licensing examination, they argue that questions of professional competence were raised and that expert testimony was necessary to establish the proper standard of care against which to measure their actions.

A conclusion of negligence is ordinarily one of mixed law and fact, involving the determination of the standard of care required and its application to the facts of the particular case. *Marley* v. *New England Transportation Co.*, 133 Conn. 586, 591, 53 A.2d 296 (1947). "In the ordinary action for negligence the jury can apply, unaided by experts, the standard of care of the reasonably prudent person under the circumstances." *Levett* v. *Etkind,* 158 Conn. 567, 573, 265 A.2d 70 (1969). This standard does not apply to an action where laymen cannot be expected to know the requirements of proper care in the usual case. Id., 573–74.[3]

Insofar as the sale of insurance requires specialized knowledge, we agree that this case differs from the ordinary negligence action since matters within that specialized body of knowledge are crucial to the determination of the issues raised. Our review of the testimony adduced at trial, however, leads us to conclude that the requirements of proper care applicable to insurance agents were adequately established for the guidance of the jury. The transcript reveals that the defendant Linardos testified that it is the responsibility of the insurance agent to make sure of the fact that the potential insured has the proper coverage. This testimony, while sparse, was sufficient to amount to an

---

[3] In such case, "[t]he testimony of an expert may be dispensed with only where there is such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence." *Levett* v. *Etkind,* 158 Conn. 567, 574, 265 A.2d 70 (1969).

opinion by one with special knowledge of the sale of insurance on the standard of care to which an insurance agent is held. See *Nielson* v. *D'Angelo,* 1 Conn. App. 239, 246, 471 A.2d 965 (1984).

While the requirements of proper care in a case such as this are a matter of specialized knowledge, the determination of the facts concerning the conduct under consideration is, as always, for the jury. See *Levett* v. *Etkind,* supra, 575; *Snyder* v. *Pantaleo,* 143 Conn. 290, 295, 122 A.2d 21 (1956). Here, the plaintiff's evidence was not so lacking in testimony on the standards applicable to insurance sales as to defeat her recovery. See *Slimak* v. *Foster,* 106 Conn. 366, 370, 138 A. 153 (1927). Linardos himself provided evidence sufficient to support a verdict. *Puro* v. *Henry,* 188 Conn. 301, 308, 449 A.2d 176 (1982); *Console* v. *Nickou,* 156 Conn. 268, 274, 240 A.2d 895 (1968); *Slimak* v. *Foster,* supra.

To address the defendants' next argument that no evidence was presented to show that they breached this standard of care, we must also consider their claim that the plaintiff did not require workers' compensation coverage. The defendants contend that no coverage was necessary because the plaintiff's part-time worker was not an employee as that term is defined in the Workers' Compensation Act. General Statutes § 31-275. That statute provides in part: "(5) 'Employee' means any person who has entered into or works under any contract of service or apprenticeship with an employer . . . but said term shall not be construed to include . . . (D) any person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the owner or occupier over twenty-six hours per week . . . ." The defendants argue that the plaintiff's employee, who worked twenty hours or less per week, came within the exception set forth in subsection (5) (D) of General Statutes § 31-275. We do not agree.

The fact that the plaintiff operated a commercial dog kennel on her property was not in dispute. It was established that, while the business was located on the same property as the plaintiff's home, the business and the dwelling were separated by at least two hundred feet, that the plaintiff purchased homeowners' insurance for the house and a separate policy of liability insurance for the dog kennels, that the part-time employee's duties consisted of cleaning the kennels, grooming the animals and answering the telephone, and that the part-time employee was paid by checks from the business, rather than by the plaintiff's personal checks. The defendants furthermore admitted in their answer that the plaintiff hired part-time summer employees to clean the kennels.

"In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1 (a). "Where the language used by the legislature is plain and unambiguous, there is no room for construction by the courts and the statute will be applied as its words direct." *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980), quoted in *Warner* v. *Leslie-Elliott Constructors, Inc.,* 194 Conn. 129, 135, 479 A.2d 231 (1984). We conclude that the individual whom the plaintiff employed to clean the kennels, groom the animals and answer the telephone had not been engaged to work "in or about a private dwelling" as required by subsection (5) (D) and thus fell within the definition of "employee" set forth in General Statutes § 31-275. The clear mandate of General Statutes § 31-284, which requires that employers secure workers' compensation for their employees,[4] and

---

[4] General Statutes § 31-284 provides in pertinent part: "(a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows,

Linardos' testimony that it is the agent's responsibility to make sure that the potential insured has proper coverage constituted sufficient evidence to show that the defendants breached the standard of care to which they were held. There was no need for a specific expression of opinion that the conduct of the defendants was negligent. See *Slimak* v. *Foster,* supra.

The care which an insurance *broker* must exercise in ensuring that the buyer has proper coverage was described in *Ursini* v. *Goldman,* 118 Conn. 554, 173 A. 789 (1934), as the "exercise [of] *reasonable* skill, care, and diligence in effecting the insurance, and any negligence or other breach of duty on [the insurance broker's] part which defeats the insurance which he undertakes to secure will render him liable to his principal for the resulting loss. . . . Where he undertakes to procure a policy affording protection against a designated risk, the law imposes upon him an obligation to perform with *reasonable* care the duty he has assumed, and he may be held liable for loss properly attributable to his default." Id., 559. (Citation omitted. Emphasis added.) We believe that this standard applies as well to insurance agents.[5]

---

except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits."

[5] General Statutes § 38-69 defines "insurance agent" and "insurance broker" as follows:

" 'Insurance agent' means a person authorized in writing, by any insurance company authorized to transact business in this state, to solicit, negotiate or effect contracts of insurance or surety, or any member of a copartnership or association or any stockholder, officer or agent of a corporation authorized to solicit, negotiate or effect such contracts, when such copartnership, association or corporation holds a direct agency appoint-

"Our review of a trial court's refusal to set aside a jury verdict is limited. 'If, on the evidence, the jury could reasonably have decided as they did, we will not find error in the trial court's acceptance of the verdict.' " *Frankovitch* v. *Burton,* 185 Conn. 14, 15, 440 A.2d 254 (1981). Applying the principle that the evidence must be given the most favorable construction to which it is reasonably entitled in support of the verdict; *Herb* v. *Kerr,* 190 Conn. 136, 140, 459 A.2d 521 (1983); we find that the court did not abuse its discretion in sustaining the verdict.

The defendants' final claim of error is that the court improperly excluded testimony that the plaintiff received payment in connection with the incident under a commercial liability policy covering her business. We see no merit in this attack on the collateral source rule, "which provides that benefits received by a plaintiff from a source wholly collateral to and independent of the tortfeasor will not diminish the damages otherwise recoverable. 22 Am. Jur. 2d, Damages, § 206." *Gorham* v. *Farmington Motor Inn, Inc.,* 159 Conn. 576, 579, 271 A.2d 94 (1970); see also *Apuzzo* v. *Seneco,* 178 Conn. 230, 233, 423, A.2d 866 (1979); *Healy* v. *White,* 173 Conn. 438, 448, 378 A.2d 540 (1977).

There is no error.

In this opinion the other judges concurred.

---

ment from an insurance company; it shall not include persons acting as executive officers or traveling salaried employees of an insurance company authorized to transact business in this state; 'insurance broker' means any person, partnership, association or corporation who or which, for compensation, acts or aids in any manner in negotiating such contracts, or in placing risks or soliciting or effecting insurance as agent for a person other than himself, and not as an officer, traveling salaried employee or licensed agent of an insurance company."