HUMISTON GRAIN CO., Appellee,

v.

ROWLEY INTERSTATE TRANSPORTA-
TION COMPANY, INC., Appellant.

ROWLEY INTERSTATE TRANSPORTA-
TION COMPANY, INC., Appellant,

v.

HUMISTON GRAIN CO., and
Robert Greer, Appellees.

HUMISTON GRAIN CO., Third–
Party Appellee,

v.

James EARNEST d/b/a Earnest
Insurance Agency, Third–
Party Appellant.

No. 92–1431.

Supreme Court of Iowa.

Feb. 23, 1994.

Chris J. Scheldrup and Robert E. Konchar of Moyer & Bergman, Cedar Rapids, for appellant James Earnest d/b/a Earnest Ins. Agency.

James M. Heckman of Bauer & Heckman, P.C., Dubuque, for appellant Rowley Interstate Transp. Co., Inc.

Eric M. Knoernschild of Hintermeister & Knoernschild, Muscatine, for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

This appeal is before us following remand in *Humiston Grain Co. v. Rowley Interstate Transportation Co.*, 483 N.W.2d 832 (Iowa 1992) (*Humiston I*). The case involves the continuing controversy over responsibility for damages sustained in a truck-train collision. This chapter centers on an insurance agent's alleged failure to procure coverage to protect against the loss, and a contractual claim for attorney fees.

The facts were detailed in *Humiston I* and will not be repeated here except to identify the parties and frame the disputed issues. Appellant Rowley Transportation Co. owned the damaged truck trailer which was operated under lease to appellee Humiston Grain Co. Humiston owned the semitractor that pulled the trailer and its cargo. The parties stipulated that Humiston's driver negligently caused the collision. They also stipulated to the amount of Rowley's damages less set-off for outstanding lease payments owed Humiston.

Complicating the picture was a statement made by a Rowley employee, prior to the accident, advising Humiston's insurance agent, third-party appellant James Earnest, that Rowley would carry physical damage (collision) insurance on the trailer and Humiston would be expected to carry liability insurance only. This statement by Rowley's employee became the focus of Humiston's defense in Rowley's subsequent suit against it on breach of contract and negligence theories, and Humiston's third-party action against Earnest.

In *Humiston I*, we affirmed the district court's finding that Rowley was estopped from recovering under the indemnification clause of the lease agreement because of its employee's representations regarding insurance coverages. *Humiston*, 483 N.W.2d at 834–35. We went on to hold, however, that Rowley was not thereby precluded from pursuing an action against Humiston for the negligence of Humiston's driver. *Id.* at 836. Because negligence and damages had been stipulated, we remanded for entry of judgment in favor of Rowley on its claim of negligence; for judgment in Humiston's favor on its claim for unpaid rental fees; and for further proceedings on Humiston's claim against Earnest for alleged negligence in failing to procure appropriate insurance coverage. *Id.*

On remand, the district court entered an $8000 judgment for Humiston based on Earnest's failure to thoroughly read the lease agreement and thereby educate himself on Humiston's insurance needs. Earnest's appeal claims—among other things—that the record is legally and factually insufficient to support such an award. Rowley has cross-appealed, claiming entitlement to attorney fees from Humiston under the lease agreement. We reverse on the appeal, and affirm on the cross-appeal.

I. Although Earnest advances a number of arguments for reversal, one issue is dispositive: Did the court err, as a matter of law, in permitting recovery on a claim of professional negligence without requiring expert testimony concerning the standard of care for insurance agents? For the reasons that follow, we believe the district court erred and must be reversed.

As a general proposition, Earnest—as Humiston's agent—was obliged to

exercise reasonable care, diligence, and judgment in the performance of tasks undertaken on behalf of his principal. *Collegiate Mfg. Co. v. McDowell's Agency, Inc.*, 200 N.W.2d 854, 857 (Iowa 1972). Persons engaged in the practice of a profession or trade are held to the standard of " 'the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.' " *Kastler v. Iowa Methodist Hosp.*, 193 N.W.2d 98, 101 (Iowa 1971) (quoting Restatement (Second) of Torts § 283 (1965)). The burden rested upon Humiston to prove Earnest's breach of this standard of care. *See Devine v. Wilson*, 373 N.W.2d 155, 157 (Iowa App.1985). Unless a professional's lack of care is so obvious as to be within the comprehension of a layperson, the standard of care and its breach must ordinarily be established through expert testimony. *Perin v. Hayne*, 210 N.W.2d 609, 613 (Iowa 1973); *Devine*, 373 N.W.2d at 157.

We have not previously addressed the question of whether, or under what circumstances, proof of an insurance agent's negligence must rest on expert testimony. Because insurance agents are professionally engaged in transactions ranging from simple to complex, the requirement of expert testimony varies from jurisdiction to jurisdiction depending on the nature of the alleged negligent act. Lori J. Henkel, Annotation, *Necessity of Expert Testimony to Show Standard of Care in Negligence Action Against Insurance Agent or Broker*, 52 A.L.R.4th 1232, 1234 (1987). At one end of the spectrum are those cases in which an agent negligently fails to procure requested coverage or permits coverage to lapse by failing to advance premiums due. Under these circumstances, commonly understood by laypersons, courts have held that expert testimony regarding the standard of care and its breach is not necessary. *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 200 (Alaska 1980) (no expert testimony required where agent failed to submit insured's premium payment to carrier); *Lowitt v. Pearsall Chem. Corp.*, 242 Md. 245, 255, 219 A.2d 67, 73 (1966) (despite payment of consideration, agent "failed to produce any policy whatsoever"); *Dimarino v. Wishkin*, 195 N.J.Super. 390, 394, 479 A.2d 444, 446 (1984) (no expert testimony needed to establish agent's utter failure to produce coverage or warn of lapse); *Consolidated Sun Ray, Inc. v. Lea*, 401 F.2d 650, 658 (3d Cir.1968) (agent's "efforts to fulfill contractual obligations palpably insufficient").

At the other end of the spectrum are cases involving the agent's alleged failure to discern coverage gaps or risks of exposure in more complex business transactions. In such cases, courts have required expert testimony to establish the applicable standard of care. *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 279 (Minn.1985) (expert testimony required when issue centers around professional judgment in absence of request for action); *Todd v. Malafronte*, 3 Conn.App. 16, 19, 484 A.2d 463, 466 (1984) (sale of insurance requires specialized knowledge and corresponding proof). Where the circumstances demand expert testimony, the agent's own admissions may furnish the necessary proof. *See id.*, 484 A.2d at 466; *Bicknell, Inc. v. Havlin*, 9 Mass.App.Ct. 497, 402 N.E.2d 116, 119 (1980) (experienced agent's admission of "technical error of judgment" sufficient to raise inference of negligence without further expert testimony).

We are convinced that the transaction before us required expert testimony to prove Humiston's claim that Earnest overlooked Rowley's subrogation rights and therefore failed the company as an insurance agent. The record reveals that when Humiston's president, Fred Humiston, showed Earnest the executed "Independent Contractor Agreement," Earnest's attention was immediately drawn to bold print that stated "OWNER MUST FURNISH LIABILITY INSURANCE. ROWLEY WILL FURNISH CARGO INSURANCE." It was this observation that led to the call to Rowley to verify the apparent limitation on Humiston's contractual insurance obligation. The remainder of the contract, however, consisted of twenty-six paragraphs of fine-print boilerplate that Earnest immediately deemed beyond his ability to decipher. The parties dispute whether Earnest told Fred Humiston so. Earnest claims he advised Fred Humiston that he should have the contract examined by an attorney to properly assess the

potential for further exposure. In any event, Fred Humiston acknowledged that he never asked Earnest to read the contract and, in fact, opined that most attorneys would probably be hard-pressed to understand it. No other evidence was introduced.

Given this record, we believe the district court had no legal basis to fault Earnest for failing to read and interpret the contract without expert testimony that such conduct would be expected of an agent under these circumstances. This is not a case in which Earnest was directed to procure specific insurance and failed to do so. Humiston's after-the-fact assumption that Earnest would read the contract is insufficient to establish an affirmative duty on Earnest's part to assess coverage gaps where no request for such an examination has been made. *Atwater Creamery*, 366 N.W.2d at 279.

Nor is this a case like *Todd* where the standard of care can be established through the agent's own opinion testimony. At trial Earnest repeatedly disclaimed any duty to determine what exposures existed for Humiston or any other client. He expressed little, if any, familiarity with legal principles governing subrogation rights. He testified that his clients bear the responsibility of knowing their own insurance needs, insisting that his duty is limited to filling their requests. Although Humiston might have tendered evidence to refute this contention, it did not do so. The district court's tacit assumption that this duty had been delegated to Earnest rests on sheer speculation. *Cf. Collegiate Mfg. Co.*, 200 N.W.2d at 859 (jury instruction placing duty on plaintiff to know own insurance needs not error in absence of evidence to the contrary).

In summary, we hold that where an insurance agent is alleged to have breached a professional duty, if the error or omission extends beyond the agent's mere failure to procure coverage requested and paid for by the client, proof of the standard of care applicable to the circumstances must be established by expert testimony. Because the record before us is without such proof, the district court's judgment against Earnest must be reversed.

II. Rowley cross-appeals the district court's refusal to enter judgment on its sizable claim for attorney fees against Humiston. Rowley's claim rests on a provision in the lease agreement entitling it to attorney fees incurred in pursuit of a claim under the contract. But because Humiston prevailed on its estoppel argument in *Humiston I*, Rowley's recovery rested on negligence, not contract. *Humiston*, 483 N.W.2d at 836. Attorney fees are not recoverable as court costs unless based on a statute or agreement authorizing them. *Lickteig v. Iowa Dep't of Transp.*, 356 N.W.2d 205, 212 (Iowa 1984); *Dole v. Harstad*, 278 N.W.2d 907, 909 (Iowa 1979). The assignment of error is without merit.

The costs of this appeal should be taxed equally between Humiston and Rowley.

**REVERSED ON APPEAL; AFFIRMED ON CROSS–APPEAL.**