# IN THE SUPREME COURT OF IOWA

No. 08–0778

Filed December 30, 2010

**DENNIS LANGWITH** and **BEN LANGWITH**, Individuals,

Appellants,

vs.

**AMERICAN NATIONAL GENERAL INSURANCE COMPANY**, a Corporation; **AMERICAN NATIONAL PROPERTY AND CASUALTY CO.**, a Corporation; and **JANET FITZGERALD**, Individually and d/b/a **AMERICAN NATIONAL JANET FITZGERALD INSURANCE SERVICES**,

Appellees.

_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

Plaintiffs appeal dismissal of their negligence claims against an insurance agent and the insurance companies represented by the agent. **DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**

John R. Hearn, Des Moines, for appellants.

Karl T. Olson of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees American National General Insurance Co. and American National Property and Casualty Co.

John F. Lorentzen and Mitchell R. Kunert of Nyemaster, Goode, West, Hansell & O'Brien, P.C., Des Moines, for appellee Fitzgerald.

**TERNUS, Chief Justice.**

The primary issue presented by this appeal is the scope of liability of an insurance agent to her clients. The appellants, Dennis Langwith and his son, Ben Langwith, sued Dennis's insurance agent, appellee Janet Fitzgerald, alleging she breached a duty of reasonable care, which resulted in their partially uninsured exposure on a personal injury claim filed against them. The Langwith plaintiffs contend appellees American National General Insurance Company and American National Property and Casualty Co. (collectively American National) are vicariously liable for the actions of Fitzgerald, American National's captive agent.

The district court granted summary judgment to Fitzgerald and American National, ruling Fitzgerald did not owe a duty beyond a "general duty to procure the insurance requested by the Langwiths," and therefore, Fitzgerald had no duty to advise Dennis Langwith with respect to the coverage provided by Dennis's umbrella liability policy or to render risk-management advice to her client, as alleged by the plaintiffs. The district court denied two motions for partial summary judgment filed by the plaintiffs in which they raised collateral issues pertinent to the risk-management claim. We reverse the district court's summary judgment ruling insofar as it determined the defendants had demonstrated they were entitled to judgment as a matter of law with respect to the claim that Fitzgerald should have advised the plaintiffs on the status of their coverage under the umbrella liability policy. We affirm the district court's ruling in all other respects and remand this case for further proceedings.

## I. Background Facts and Proceedings.

Fitzgerald is a self-employed captive agent for American National doing business under the name of American National Janet Fitzgerald

Insurance Services. Prior to the events giving rise to this lawsuit, Dennis and his wife, Susan Langwith (hereinafter the Langwiths), had purchased substantially all of their insurance through Fitzgerald. During this time, they had consistently carried an automobile liability insurance policy with limits of $250,000 and an umbrella policy with $3,000,000 limits, both issued by American National. These policies also covered the Langwiths' two children, including Ben.

In December 2003, Ben's driver's license was suspended, which prompted American National to cancel Ben's coverage under the automobile liability policy. American National also sought to cancel the umbrella policy, but did not do so after Dennis and Susan signed a form agreeing to a driver exclusion for Ben. (This exclusion precluded coverage under the umbrella policy for any insured for any loss sustained while the vehicle was being operated by Ben.) When Ben's driver's license was reinstated, Susan spoke with Fitzgerald regarding insurance coverage for Ben. As a result of that conversation, Fitzgerald procured a high-risk policy from American National that covered Ben when driving the Langwiths' vehicles. This policy had limits of $250,000. The Langwiths assumed Ben was once again covered by the umbrella policy since Ben's driver's license had been reinstated and he had obtained the required underlying liability coverage. Contrary to this understanding, the driver exclusion for Ben remained on the Langwiths' umbrella policy.

On July 16, 2006, Ben was in an accident when driving a Chevrolet Suburban titled in Dennis's name. Corey Shannon, a passenger in Ben's vehicle, was severely injured. Shannon sued Ben based on Ben's alleged negligent operation of the Suburban, and he sued Dennis under the owner-liability statute. *See* Iowa Code § 321.493

(2005) (imposing liability on the owner of a vehicle for damages caused by a consent driver). American National acknowledged coverage for these claims under the automobile liability policy issued to the Langwiths and has provided a defense to Dennis and Ben in the Shannon lawsuit pursuant to its obligations under this policy. American National has denied any liability under the umbrella policy, however, based on the driver exclusion for Ben.

Dennis and Ben filed this suit alleging, after various amendments, that Fitzgerald breached a duty of care to them by (1) failing to disclose that the driver exclusion in the umbrella policy continued after Ben's license was reinstated, and (2) failing to advise the Langwiths that Dennis could avoid all personal liability for Ben's driving by transferring title to the Suburban to Ben. The plaintiffs sought to hold the insurers vicariously liable for Fitzgerald's breach of duty.

After conducting discovery, the plaintiffs filed two motions for partial summary judgment. The first motion for partial summary judgment sought adjudication of issues concerning proximate cause as it related to the plaintiffs' contention Fitzgerald should have advised them to transfer title to the vehicle driven by Ben. The second motion for partial summary judgment sought a ruling that advice by an insurance agent to a client on how to title the client's vehicle is not legal advice that would render the agent's conduct the unauthorized practice of law. Before the court ruled on these motions, Fitzgerald filed a motion for summary judgment requesting that the court rule as a matter of law that informing the Langwiths that the driver exclusion continued on the umbrella policy and advising them that title to the Suburban should be transferred to Ben so Dennis could avoid legal liability for Ben's negligent driving "are outside the scope of Fitzgerald's duty as an insurance agent."

American National joined in Fitzgerald's motion for summary judgment. As noted earlier, the district court granted the motion filed by Fitzgerald and denied the plaintiffs' motions for partial summary judgment. The plaintiffs appealed.

## II. Scope of Review.

We review rulings on motions for summary judgment for the correction of errors at law. *Hunter v. City of Des Moines Mun. Hous. Auth.*, 742 N.W.2d 578, 584 (Iowa 2007). " 'To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law.' " *Baker v. City of Iowa City*, 750 N.W.2d 93, 97 (Iowa 2008) (quoting *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999)); *see* Iowa R. Civ. P. 1.981(3) (authorizing summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law"). In determining whether the district court correctly ruled the defendants had met their burden under this standard, we view the evidence in a light most favorable to the nonmoving party. *Hunter*, 742 N.W.2d at 584.

## III. Defendant's Motion for Summary Judgment.

**A. Duty of Insurance Agent.** The district court granted Fitzgerald's motion for summary judgment on the ground that Fitzgerald had no duty to advise the Langwiths with respect to umbrella coverage on Ben or with respect to avoiding Dennis's vicarious liability for Ben's negligent driving. In reaching this conclusion, the court relied on settled Iowa law restricting the obligation of insurance agents to their clients. *See Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 464–65 (Iowa 1984); *Collegiate Mfg. Co. v. McDowell's Agency, Inc.*, 200 N.W.2d

854, 857–58 (Iowa 1972). We begin our discussion with a review of these cases.

In *Collegiate Manufacturing Co.*, the plaintiff sued its insurance agent, claiming the agent negligently failed to provide adequate coverage for the plaintiff's business inventory. 200 N.W.2d at 856. After an adverse jury verdict, the plaintiff appealed, asserting error in the trial court's instructions. *Id.* at 856–57. Specifically, the plaintiff objected to an instruction that stated in part:

> You are instructed that there is a duty upon the owner of insurable property to familiarize himself with the quantity and value of such property, its insurability, the kinds and amounts of insurance available, and in general the terms and conditions of the insurances issued upon his property.
>
> As applied to this case, it was the duty of the plaintiff to advise Stoll [the insurance agent], generally, as to the quantity and value of the property to be insured and the kinds and amounts of insurance desired, and then it was the duty of Stoll to use due diligence to procure the insurance and at all times to keep the plaintiff advised and informed as to the insurances available and procured.

*Id.* at 857. This court rejected the plaintiff's challenge to this instruction, noting the relationship between an insured and an insurance agent is one of principal/agent. *Id.* at 858. Consistent with the nature of this relationship, we held an insurance agent "owes his principal the use of such skill as is required *to accomplish the object of his employment.*" *Id.* at 857 (emphasis added). Acknowledging that an agent's duties may be limited or enlarged "by agreement of the parties," *id.*, we concluded there was no evidence showing "the burden of deciding for plaintiff both the type and amount of insurance to be provided" had been delegated to the insurance agent. *Id.* at 859.

In our subsequent decision in *Sandbulte*, we discussed the circumstances under which an insurance agent's "general duty . . . to

use reasonable care, diligence, and judgment in procuring the insurance requested by an insured" could be enlarged. 343 N.W.2d at 464. We stated:

> An expanded agency agreement, arrangement or relationship, sufficient to require a greater duty from the agent than the general duty, generally exists when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured.

*Id.* We rejected the notion that such an expanded agency relationship could be established solely by proof of a long-standing relationship between the insurance agent and his client. *Id.* at 465.

The Langwiths claim a later decision of this court casts some doubt on the continuing validity of the *Sandbulte* requirements for expanding the duty owed by an insurance agent to his client. In *Humiston Grain Co. v. Rowley Interstate Transportation Co.*, 512 N.W.2d 573 (Iowa 1994), this court characterized the claim made by the plaintiff against its insurance agent as one of "professional negligence." 512 N.W.2d at 574. Quoting from a prior decision of this court that quoted Restatement (Second) of Torts section 299A, at 73 (1965), we noted that "[p]ersons engaged in the practice of a profession or trade are held to the standard of ' "the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." ' " *Id.* at 575 (quoting *Kastler v. Iowa Methodist Hosp.*, 193 N.W.2d 98, 101 (Iowa 1971)).[1]

---

[1]As we have indicated, the language we quote in this opinion from *Humiston Grain Co.* originated in *Kastler*. *See Humiston Grain Co.*, 512 N.W.2d at 575 (quoting *Kastler*, 193 N.W.2d at 101). In *Humiston Grain Co.*, this court erroneously attributed the *Kastler* quote to Restatement (Second) of Torts section 283. In fact, *Kastler* quoted from and cited to Restatement (Second) of Torts section 299A. *Kastler*, 193 N.W.2d at 101.

The issue presented in *Humiston Grain Co.* was whether expert testimony was required to prove the insurance agent's negligence. *Id.* Noting the diverse transactions that can form the basis for a claim of professional negligence against an insurance agent, we stated:

> Because insurance agents are professionally engaged in transactions ranging from simple to complex, the requirement of expert testimony varies from jurisdiction to jurisdiction depending on the nature of the alleged negligent act. At one end of the spectrum are those cases in which an agent negligently fails to procure coverage or permits coverage to lapse by failing to advance premiums due. Under these circumstances, commonly understood by laypersons, courts have held that expert testimony regarding the standard of care and its breach is not necessary.
>
> At the other end of the spectrum are cases involving the agent's alleged failure to discern coverage gaps or risks of exposure in more complex business transactions. In such cases, courts have required expert testimony to establish the applicable standard of care.
>
> . . . .
>
> . . . [W]e hold that where an insurance agent is alleged to have breached a professional duty, if the error or omission extends beyond the agent's mere failure to procure coverage requested and paid for by the client, proof of the standard of care applicable to the circumstances must be established by expert testimony.

*Id.* at 575–76 (citations omitted).[2] Because the claim in *Humiston Grain Co.* was not one in which the agent "was directed to procure specific insurance and failed to do so," we held the plaintiff was required to prove the agent's breach of duty through the testimony of an expert witness. *Id.* at 576.

---

[2]Although we refer to expert testimony to prove "the standard of care" in *Humiston Grain Co.*, the standard of care is established by section 299A ("the skill and knowledge normally possessed by members of [the defendant's] profession or trade"). Expert testimony actually addresses whether that standard has been breached; in other words, whether the defendant's conduct is consistent with "the skill and knowledge normally possessed by members of [the defendant's] profession or trade."

The defendants contend the existence of a duty was apparently presumed in *Humiston Grain Co.* so that decision did not address and does not undermine the limitations on an insurance agent's duty to his client recognized in *Collegiate Manufacturing Co.* and *Sandbulte.* Taking a contrary view, the plaintiffs contend the court in *Humiston Grain Co.* discarded the requirements for an expanded agency duty "without specifically saying so . . . and simply held that agents must adhere to the prevailing 'standard of care' for insurance agents."

We decline to read into our decision in *Humiston Grain Co.* the sweeping changes suggested by the plaintiffs. Moreover, we think these three cases can be reconciled rather easily: *Collegiate Manufacturing Co.* and *Sandbulte* discuss the circumstances under which an insurance agent owes a more expansive duty to a client than the general duty to procure the requested insurance, and *Humiston Grain Co.* and Restatement (Second) of Torts section 299A, cited in that decision, define the standard of care that applies to the agent's exercise of his or her duty and how a breach of that standard must be proved.

As the defendants in this case acknowledge, it is entirely appropriate to require an insurance agent "to exercise the skill and knowledge normally possessed by [insurance agents] in similar communities" in rendering services to their clients. *See* Restatement (Third) of Agency § 8.08 cmt. *c*, at 346 (2006) (stating that an agent who "undertakes to perform services as a practitioner of a trade or profession" must conform to the standard of care set forth in the Restatement (Second) of Torts section 299A, "unless the agent represents that the agent possesses greater or lesser skill"); 3 Am. Jur. 2d *Agency* § 212, at 600 (2002) ("An agent who holds himself or herself out as having particular skills and talents in a certain field assumes an obligation to

exercise such care and skills as would characterize counterparts in the same field, and different in kind from the diligence or capacity of the ordinary citizen. Likewise, a professional agent is required to have the particular knowledge and to exercise the particular skill and diligence expected of it." (Footnotes omitted.)). In this respect, our decision in *Humiston Grain Co.* was consistent with prior Iowa case law on this subject. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 248 N.W.2d 903, 906 (Iowa 1976) (holding insurance agent must " 'exercise such reasonable skill and ordinary diligence as may fairly be expected from a person in his profession or situation' " (quoting *Couch on Insurance 2d* § 25:32, at 329)).

The question presented in the case before us is the scope of the duty owed by an insurance agent to his client, not the standard by which performance of that duty is judged. With respect to the former issue, the import of our decisions in *Collegiate Manufacturing Co.* and *Sandbulte* was to limit an insurance agent's obligation to procurement of the coverage requested by the client, relieving the agent of any duty to advise his client of the kinds and amounts of insurance that would protect his client's insurable interests unless there was evidence of an expanded agency agreement. Moreover, the circumstances under which an expanded agency agreement could arise were narrowly circumscribed in *Sandbulte*: "the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured." 343 N.W.2d at 464. Although this court cited some authority for its holding in *Sandbulte*, we gave no rationale for such a restrictive approach.

Our examination of the general principles governing agency relationships convinces us that a more flexible method of determining

the undertaking of an insurance agent is appropriate. The Restatement (Third) of Agency ties the duty of the agent to the agent's contractual undertaking. Restatement (Third) of Agency § 8.07, at 334 ("An agent has a duty to act *in accordance with the express and implied terms of any contract* between the agent and principal." (Emphasis added.)); *id.* § 8.07 cmt. *a,* at 334 ("This section makes the basic point that an agent's duties of performance to the principal are subject to the terms of any contract between them."). As the authors of the Restatement note in a comment to section 8.08, "The specific skills that an agent must possess to be competent depend on the nature of the service *that the agent undertakes to provide* and the circumstances under which it will be provided . . . ."[3] *Id.* § 8.08 cmt. *c,* at 345–46 (emphasis added); *see also id.* § 8.08 cmt. *b,* at 343 ("Regardless of their content, contractually shaped or contractually created duties are grounded in the mutual assent of agent and principal."); *see id.* § 8.08 cmt. *d,* at 347 ("Ordinarily, the scope of an agent's duty to be diligent is limited by the scope of the services the agent undertakes to perform for the principal."); *see also Peterson v. Big Bend Ins. Agency, Inc.,* 202 P.3d 372, 377 (Wash. Ct. App. 2009) ("An insurance agent assumes only the duties found in an agency relationship unless the agent assumes additional duties by contract or by holding himself or herself out as possessing an extraordinary skill."). This approach is consistent with our statement in *Collegiate Manufacturing Co.* that an insurance agent's ordinary duty "may be altered . . . by agreement of the parties." 200 N.W.2d at 857.

---

[3]Because the duty analysis in this case is based on agency principles and involves economic loss, the duty analysis adopted by this court in *Thompson v. Kaczinski*, 774 N.W.2d 829 (Iowa 2009), based on Restatement (Third) of Torts: Liability for Physical and Emotional Harm, is not dispositive.

The defendants have advanced no reason, nor have we identified one, that would justify the limitations placed on the circumstances that might be considered in determining the duty undertaken by an insurance agent, as stated in *Sandbulte*. Therefore, we hold that it is for the fact finder to determine, based on a consideration of all the circumstances, the agreement of the parties with respect to the service to be rendered by the insurance agent and whether that service was performed with the skill and knowledge normally possessed by insurance agents under like circumstances. *See Fowler v. Berry Seed Co.*, 248 Iowa 1158, 1165, 84 N.W.2d 412, 416 (1957) (stating extent of agency is a fact question). Some of the circumstances that may be considered by the fact finder in determining the undertaking of the insurance agent include the nature and content of the discussions between the agent and the client; the prior dealings of the parties, if any; the knowledge and sophistication of the client; whether the agent holds himself out as an insurance specialist, consultant, or counselor; and whether the agent receives compensation for additional or specialized services. *See Fitzpatrick v. Hayes*, 67 Cal. Rptr. 2d 445, 452 (Ct. App. 1997) (holding that, "as a general proposition, an insurance agent does not have a duty to volunteer to an insured that the latter should procure additional or different insurance coverage," but that such a duty can arise when "(a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided . . ., (b) there is a request or inquiry by the insured for a particular type or extent of coverage . . ., or (c) the agent assumes an additional duty by either express agreement or by 'holding himself out' as having expertise in a given field of insurance being sought by the insured"); *Harts v. Farmers Ins. Exch.*, 597 N.W.2d 47, 52 (Mich. 1999) (stating "the general rule of no duty changes when (1) the agent

misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured" (footnotes omitted)); *Murphy v. Kuhn*, 682 N.E.2d 972, 975–76 (N.Y. 1997) (noting "jurisdictions have recognized such an additional duty of advisement in exceptional situations where, for example, (1) the agent receives compensation for consultation apart from payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on" (citations omitted)); *Houck v. State Farm Fire & Cas. Ins. Co.*, 620 S.E.2d 326, 329 (S.C. 2005) ("In determining whether an implied duty [to advise an insured] has been created, courts consider several factors, including whether:  (1) the agent received consideration beyond a mere payment of the premium, (2) the insured made a clear request for advice, or (3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on."  (Citations omitted.)); *see also* 43 Am. Jur. 2d *Insurance* § 162, at 205–06 (2003);[4] 3

---

[4]This provision states:

> *Although an insurance agent has an obligation to follow a customer's instructions and procure adequate coverage on the best terms available, an agent who fulfills this obligation does not have a duty to advise the insured regarding the adequacy of the coverage, absent a specific agreement to do so or a special relationship with the customer involving a discussion of the subject and the customer's reliance on the agent's expertise.*  Since insureds have the primary responsibility to determine their own needs, an agent is not required to advise an

Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 46:61, at 46–91 to 46–92 (1995) [hereinafter *Couch on Insurance 3d*].[5]

The client bears the burden of proving an agreement to render services beyond the general duty to obtain the coverage requested. *Murphy,* 682 N.E.2d at 976. In the absence of circumstances indicating the insurance agent has assumed a duty beyond the procurement of the coverage requested by the client, the insurance agent has no obligation to advise a client regarding additional coverage or risk management. *See Sintros v. Hamon,* 810 A.2d 553, 555 (N.H. 2002) ("A majority of courts that have considered the issue have held that an insurance agent owes

_____

applicant who is knowledgeable about insurance, as the relationship is not one of trust accompanied by the agent's awareness of a duty to take the initiative in giving advice.

*An insurance agent's duty to advise does not arise until the customer seeks advice or questions the adequacy of coverage. The scope of any duty is ordinarily defined by the nature of the request made by the customer*, and the customer must provide sufficient information, so that the agent can ascertain the customer's requirements. Even where an agent has some knowledge that an insured may require additional insurance, a duty does not arise if the agent and customer had no prior dealings in which the agent has customarily taken care of the client's needs without consulting him or her. Therefore, while insurance agents are not necessarily personal financial counselors and risk managers, and thus have no continuing duty to advise a client to obtain additional coverage, an agent who holds him or herself out as an insurance specialist, consultant or counselor, and receives compensation for consultation, in addition to premiums, is under a greater duty to advise the insured.

43 Am. Jur. 2d *Insurance* § 162, at 205–06 (footnotes omitted and emphasis added).

[5]*Couch* states on this subject:

Generally, an insurance agent does not have affirmative duty to advise client regarding the adequacy of policy's coverage, but a duty to advise may arise when a "special relationship" exists between the insurance company or its agent and the policyholder. Something more than ordinary insured/insurer relationship is required to create "special relationship"—there must be a long-standing relationship between parties, some type of interaction on question of coverage, and reliance by insured on representations of insurance agent to insured's detriment.

3 *Couch on Insurance 3d* § 46:61, at 46–91 to 46–92 (footnotes omitted).

clients a duty of reasonable care and diligence, but absent a special relationship, that duty does not include an affirmative, continuing obligation to inform or advise an insured regarding the availability or sufficiency of insurance coverage."). We think this analytical framework respects the principal/agent relationship, yet accounts for the diverse undertakings of an insurance agent that can vary from the simple procurement of the particular insurance coverage requested by the client to a full risk assessment to anything in-between. In light of our abandonment of the restrictive requirements for an expanded agency duty, we overrule our *Sandbulte* decision to the extent it limits an expanded duty to those cases in which the agent holds himself out as an insurance specialist, consultant, or counselor and receives compensation for additional or specialized services.[6]

**B. Application of Summary Judgment Standard.** Applying the principles announced above, we now examine the defendants' contention they are entitled to judgment as a matter of law. The plaintiffs claim Fitzgerald was negligent in two respects: (1) failing to disclose that the driver exclusion in the umbrella policy continued after Ben's license was reinstated, and (2) failing to advise the Langwiths that Dennis could avoid all personal liability for Ben's driving by transferring title to the

---

[6]We do not overrule our decision in *Collegiate Manufacturing Co.*, as it is entirely consistent with our decision in the present case. We said in that case regarding "the nature and extent" of an insurance agent's duty to his client:

> Generally an agent owes his principal the use of such skill as is required to accomplish the object of his employment. If he fails to exercise reasonable care, diligence, and judgment in this task, he is liable to his principal for any loss or damage occasioned thereby.
>
> This general rule may be altered, either to limit or enlarge the ordinary duties, by agreement of the parties.

*Collegiate Mfg. Co.*, 200 N.W.2d at 857 (citations omitted).

Suburban to Ben.[7]  We must examine the record, in the light most favorable to the plaintiffs, to determine whether there are facts that would support a finding of an "agreement between the parties, interpreted in light of the circumstances under which it is made," that obligated Fitzgerald to advise the Langwiths that the driver exclusion on the umbrella policy continued and that Dennis could avoid liability for Ben if he put the title to the Suburban in Ben's name.

The summary judgment record shows the Langwiths had purchased nearly all their insurance policies through Fitzgerald for ten to twelve years.[8]  Dennis Langwith had several conversations with Fitzgerald over the years with respect to property insurance and general liability insurance on his business and his business properties, as well as with respect to liability insurance on his business vehicles.  Dennis testified in his deposition that Fitzgerald recommended the appropriate

---

[7]The plaintiffs claim on appeal that Restatement (Second) of Torts section 552, at 126–27 (1977), supports the imposition of liability on an insurance agent in addition to liability based on negligence in performing the general duty to procure the insurance requested by the client.  Section 552 concerns the tort of negligent misrepresentation.  This tort "does not apply to the failure to provide information." *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 128 (Iowa 2001).  Both allegations of negligence made by the plaintiffs in this case involve the failure of Fitzgerald to provide information or give advice.  Therefore, the tort of negligent misrepresentation is not implicated here, and we give it no further attention. *See Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1172 (10th Cir. 2008) (holding insured did not have claim against insurance agent for negligent misrepresentation where agent "made no false statements").

For the first time in their reply brief, the plaintiffs argue Fitzgerald's conduct is actionable under Restatement (Second) of Torts section 551 governing liability for nondisclosure.  We will not consider issues raised for the first time in a reply brief. *See Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 366 n.2 (Iowa 2007).  Nonetheless, we note that liability under section 551 rests on "a duty to the other to exercise reasonable care to disclose the matter in question." Restatement (Second) of Torts § 551(1), at 119.  Absent a duty to disclose, there is no liability. *Id.* § 551 cmt. *a*, at 119–20.  We question, therefore, whether an analysis under section 551 would be materially different than the analysis in which we engage in this opinion.

[8]The only insurance not purchased through Fitzgerald was professional liability insurance obtained by Dennis Langwith, an orthodontist, through a different agent.

coverage to meet his insurance needs, advice that he usually, but not always, followed.

Susan had the most contact with Fitzgerald with respect to family insurance matters and testified in her deposition that their relationship was based solely upon the Langwiths' "insurance liability and needs." Susan also stated that Fitzgerald gave the Langwiths advice on insurance matters, which they would usually follow. When Ben lost his driver's license, Susan called Fitzgerald to have Ben removed from their automobile liability policy. At that time, Fitzgerald asked the Langwiths to sign an exclusion on their umbrella policy for any liability arising from Ben's operation of any vehicle in order to avoid cancellation of that policy. The Langwiths signed the requested form and were aware the exclusion precluded coverage under the umbrella policy for claims arising from Ben's driving.

After Ben's license was reinstated, Susan met with Fitzgerald at Fitzgerald's office and asked Fitzgerald "what we could do about Ben." Susan testified she meant "how can we cover him? How can we provide liability coverage that protects him and all of us?" Susan said she "was asking for [Fitzgerald's] professional advice." Fitzgerald told her they could get a high-risk policy for Ben with limits of $250,000, which Fitzgerald did. Although Susan and Fitzgerald did not discuss the umbrella coverage, Susan and Dennis assumed the umbrella policy covered Ben's driving once his license was reinstated. Fitzgerald did not inform the Langwiths that the driver's exclusion had been removed from the umbrella policy, nor did she tell them it had not been removed. The parties disagree as to whether the Langwiths should have known the exclusion continued based on the declarations pages they periodically received.

Dennis testified they had never asked Fitzgerald for advice on matters other than those that involved insurance. More specifically, the Langwiths never asked Fitzgerald for advice as to how to title their business or personal vehicles. Nonetheless, Susan testified Fitzgerald should have advised them to have title to the Suburban put in Ben's name due to the following circumstances: (1) the Langwiths "had quite a communication with her [Fitzgerald] through the years," and "[i]t wasn't as if [they] just went into her office all of a sudden"; (2) Fitzgerald "knew [their] family," "knew the situation of [their] family dynamics and covering [them] in every way through insurance"; and (3) Fitzgerald "knew who was driving and . . . knew the age and all the data that . . . you have at your disposal when you are an agent, to know when the kids have the most trouble, need the most help when they're in their driving situations." Dennis testified that he thought Fitzgerald should have advised them to put title to the Suburban in Ben's name because she was "in the business of risk management."[9]

We conclude the record shows a genuine issue of material fact with respect to the plaintiffs' first claim of negligence, namely, that Fitzgerald should have told the Langwiths that the driver exclusion remained on the umbrella policy. A fact finder could conclude from Susan's inquiry regarding "what [they] could do about Ben" that she was seeking Fitzgerald's "professional guidance" regarding "liability coverage that [would] protect[] him and [the Langwiths]," as Susan testified. A fact finder could also conclude that Fitzgerald understood or should have

---

[9]Other than Dennis's stated belief that Fitzgerald was "in the business of risk management," there was no evidence that Fitzgerald held herself out as a specialist or consultant on risk management. Indeed, the plaintiffs acknowledge in their appellate brief that Fitzgerald did not hold herself out as an insurance specialist, counselor, or consultant and that she was not compensated beyond her commission on insurance premiums.

understood the nature of this request and that she responded by finding an automobile liability policy to insure Ben. Accordingly, a fact finder could find that the parties had an implied agreement that Fitzgerald would advise the Langwiths with respect to the liability coverage that could or should be put in place to protect Ben and his parents, including umbrella liability coverage. *Cf. Fitzpatrick*, 67 Cal. Rptr. 2d at 452 (stating duty may arise if "there is a request or inquiry by the insured for a particular type or extent of coverage"); *Murphy*, 682 N.E.2d at 976 (noting jurisdictions have recognized "an additional duty of advisement . . . where, for example . . . there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent"); 4 *Couch on Insurance 3d* § 55:5, at 55–12 (1996) (stating "although insurer's agents are not required under a general duty of care to advise the insured regarding the sufficiency of coverage limits . . ., once they elect to respond to his or her inquiries, a special duty arises requiring them to use reasonable care"). *See generally* Restatement (Third) of Agency § 8.11 cmt. *d,* at 377 ("If an agent fails to provide information to the principal that is material to decisions that the principal will make, the agent may not have acted with the diligence and care reasonably to be expected of an agent in a particular position."). Therefore, we reverse that part of the district court's summary judgment ruling granting judgment to the defendants on the claim Fitzgerald negligently failed to advise the Langwiths regarding coverage under the umbrella policy. *See Peter v. Schumacher Enters., Inc.*, 22 P.3d 481, 487 (Alaska 2001) (stating whether client made inquiry that required insurance agent to advise client on available levels of coverage for UM/UIM coverage is a fact question to be resolved at trial).

We reach a contrary conclusion with respect to the allegation that Fitzgerald should have advised the Langwiths to transfer title on the vehicle driven by Ben from Dennis to Ben. It is undisputed there was no express agreement that Fitzgerald would assess the Langwiths' liability risk with respect to Ben and advise them on how to avoid that risk. Fitzgerald did not hold herself out as a specialist, consultant, or counselor, nor did the Langwiths compensate her for consultation and advice apart from the premiums they paid. Moreover, there were no prior dealings between these parties in which Fitzgerald was ever requested to give advice outside of the proper insurance policy to ensure a particular risk. As Susan testified, Fitzgerald had never given them advice in the past "about matters other than insurance." The fact that the parties had a long-standing relationship through which Fitzgerald gained knowledge of the "family dynamics" is not sufficient evidence from which a fact finder could find that there was an implied agreement to expand Fitzgerald's undertaking from advising how risk could be *insured* to advising how risk could be *avoided. Cf. Nelson v. Davidson*, 456 N.W.2d 343, 347 (Wis. 1990) ("The mere allegation that a client relied upon an agent and had great confidence in him is insufficient to imply the existence of a duty to advise."), *superseded on other grounds by statute*, Wis. Stat. § 632.32(4m) (1995), *as recognized in Avery v. Diedrich*, 734 N.W.2d 159, 165 n.3 (Wis. 2007). There is a material distinction between insuring risk and avoiding risk, and there are no circumstances present here that support a finding the parties agreed Fitzgerald would advise the Langwiths on risk avoidance.[10]

---

[10]The plaintiffs note that, when Susan asked Fitzgerald what they "could do about Ben," Fitzgerald said, "Get him a bike." The plaintiffs suggest on appeal that this response demonstrates Fitzgerald undertook to render risk-avoidance advice and that Fitzgerald "misled Langwiths to believe she could properly give such advice and would

We have considered the plaintiffs' contention, which they seek to establish through expert testimony, that *all* insurance agents have a duty to render risk-management advice to their clients under such circumstances. We reject this argument, as it is not consistent with the general agency principles we apply, making the duty of the agent to his client dependent upon the parties' agreement as determined from the peculiar circumstances of each case. *See Murphy*, 682 N.E.2d at 976 ("Insurance agents or brokers are not personal financial counselors and risk managers, approaching guarantor status. Insureds are in a better position to know their personal assets and abilities to protect themselves more so than general insurance agents or brokers, *unless the latter are informed and asked to advise and act.*" (Citation omitted and emphasis added.)). Therefore, we affirm that part of the district court's summary judgment ruling granting judgment to the defendants on the plaintiffs' claim Fitzgerald was negligent in failing to advise the Langwiths to put title to the Suburban in Ben's name alone.[11] *See Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1171 (10th Cir. 2008) (affirming summary judgment for insurance agent, finding no facts to show agent assumed any responsibilities for personal risk-management services).

---

do so." We decline to rest an agreement to render risk-management advice on such an isolated, even flippant, comment, particularly when Susan testified that, during this meeting with Fitzgerald, she was seeking Fitzgerald's professional advice "regarding liability coverage." *See* 43 Am. Jur. 2d *Insurance* § 162, at 205 ("The scope of any duty is ordinarily defined by the nature of the request made by the customer.").

[11]Because the record does not support a finding that Fitzgerald had a duty to advise the Langwiths on risk-management strategies unrelated to insurance coverage, the plaintiffs' claim that Fitzgerald should have advised the Langwiths to put the title on the Suburban in Ben's name fails, whether that claim rests on agency principles or on Restatement (Second) of Torts section 551.

### IV. Plaintiffs' Motions for Partial Summary Judgment.

Because we have affirmed the district court's dismissal of the plaintiffs' claim based on an alleged duty of Fitzgerald to render risk-management advice, we need not consider the collateral issues raised in the plaintiffs' motions for partial summary judgment, including whether advice by an insurance agent that title to a vehicle should be transferred to avoid legal liability constitutes the unauthorized practice of law, whether any negligence in failing to advise the Langwiths to transfer title of the Suburban to Ben was a proximate cause of damage to the plaintiffs, and whether the proffered expert testimony on these matters is admissible. In light of our ruling on the defendants' motion for summary judgment, these issues are now moot. Therefore, we affirm the district court's denial of the plaintiffs' motions for partial summary judgment.

The final matter we address concerns references in the parties' appellate briefing regarding American National's vicarious liability for Fitzgerald's negligence. This issue was raised in American National's resistance to the plaintiffs' first motion for partial summary judgment regarding the causal relationship between Fitzgerald's alleged negligence in failing to render risk-avoidance advice and the plaintiffs' damages. American National alleged in its resistance that Fitzgerald had no duty to advise the Langwiths on how to title their vehicles. It alleged alternatively that, if an expanded agency agreement existed so as to give rise to such a duty, Fitzgerald's rendering of such advice would be beyond the scope of the contractual relationship between American National and Fitzgerald. The trial court did not rule on this latter issue when it considered the plaintiffs' first motion for partial summary judgment.

Because the issues raised in the plaintiffs' first motion for partial summary judgment are moot, we need not address the issues raised in American National's resistance to that motion. American National has not challenged its vicarious liability for the remaining claim based on Fitzgerald's failure to advise the plaintiffs that the driver exclusion remained on the umbrella policy. For these reasons, we do not discuss American National's vicarious liability for Fitzgerald's conduct.

**V. Disposition.**

The district court's summary judgment in favor of the defendants on the plaintiffs' claim Fitzgerald breached a duty to advise them that coverage for Ben was excluded from the umbrella liability policy after Ben's license was reinstated is reversed. The district court's summary judgment in favor of the defendants on the plaintiffs' claim that Fitzgerald had a duty to advise the Langwiths on how to avoid legal liability for Ben's negligent driving is affirmed, as is the district court's denial of the plaintiffs' motions for partial summary judgment addressing issues collateral to that claim. This case is remanded for further proceedings consistent with this opinion.

**DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**